## Mary A. Taylor, Administratrix, Appellee v. Centralia Coal Company, Appellant.

1. MASTER AND SERVANT—*effect of imposing obligation of inspection upon servant.* Where the duty of inspection is imposed upon the servant and accepted by him and such duty is simple and plain and the servant is clearly competent to perform the same, the master is relieved from any duty to inspect and is not liable in the event of an injury resulting from a failure to inspect.

2. MASTER AND SERVANT—*obligation of latter to inspect.* It is the duty of the servant without regard to any rules upon the subject to see that the appliances or machinery with which he works and becomes familiar are in repair and have no open and obvious defects that may be discovered by simply looking at them.

3. MASTER AND SERVANT—*what obligations personal to former.* A master can in no case relieve himself from liability for failure to use reasonable care to furnish reasonably safe instrumentalities.

4. MASTER AND SERVANT—*duty of former to furnish appliances.* It is the duty of the master, which he cannot delegate, to exercise reasonable care to furnish to the servant reasonably safe appliances. The master, however, is not liable if there are hidden defects and dangers which could not be discovered and avoided by a reasonably careful inspection.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Marion county; the Hon. S. L. DWIGHT, Judge, presiding. Heard in this court at the October term, 1909. Reversed. Opinion filed April 9, 1910.

**Statement by the Court.** Mary A. Taylor, administratrix of the estate of Henry A. Taylor, deceased, recovered a judgment in the Circuit Court of Marion county for the sum of $2,000 against Centralia Coal Company in an action on the case for damages for the death of said Henry A. Taylor, alleged to have been caused by the negligence of said company. The deceased left surviving him Mary A. Taylor, his widow, with whom he resided, and no children. Centralia Coal Company prosecutes this appeal.

The deceased was a coal miner of about five years' experience, and was employed at the defendant's coal mine at Centralia, Illinois, as a coal miner and shotfirer. About five o'clock in the evening of March 10,

1908, while lighting a squib in room 29 on 13th south entry of appellant's mine, he was instantly killed by the premature explosion of the shot. James E. Thompkins, another shot-firer who was working with the deceased, was about fifty feet from him, and is the only person who saw what transpired. He saw the deceased go to the face to light the shot, saw him pull the needle, put the squib in the hole, take his light off his cap, and stoop over to light the squib, and then the shot went off immediately. Shots are prepared in this mine by the miners who drill a hole generally at an angle in the face of the coal about two inches in diameter and from six to eight feet long, with a drilling machine. About a quart and a half of blasting powder is then poured into a paper barrel about two inches in diameter which is then rammed into the hole. A copper needle about five or six feet long and about the size of one's little finger is inserted into the hole and well into the powder in the cartridge, leaving five or six inches of the needle protruding from the face of the coal so it can be drawn by the shot-firer. The hole is then filled with wet clay and slack and well tamped. The shot-firers later fire these shots by drawing the needle, placing a squib in the hole with the match of the squib and about one-half inch more of the squib protruding from the hole, and then applying the blaze of their lamp to the outer end of the match. The squib used in this mine and by the deceased when killed, is what is known as the Powell squib. It is about six inches long and has two parts all in one piece, the squib proper about four inches long, and the match about two inches long. The squib proper is made of tissue paper tightly glued into a hollow cylinder about the same diameter as a small parlor match and is filled with fine black powder. The match portion of the squib is an extension of the tissue paper, but is simply tightly twisted so as to hold the powder in the squib proper and then dipped into melted sulphur. If the squib and match are all right and properly lighted at

the end of the match, it requires from a half minute to a minute for the match to burn to, and explode, the powder in the squib. If however the blaze is applied to the shoulder of the squib, next to the match, it will explode in from ten to twenty seconds, according to the evidence in this record. A premature explosion may also occur if the match is defective by reason of having powder in the match, or by reason of the match being broken or torn off too closely to the squib proper. The time in which the match will burn before exploding the powder in the squib necessarily depends on the length of the match, and the amount of sulphur on it and the point at which it is lighted when it is in proper condition. The squibs are purchased by the mine owners from the manufacturers of the squibs; and are distributed to the shot-firers through the checkweighman, in small sealed paper boxes each containing one hundred squibs, the miners paying the company for the squibs. These squibs are shipped to the coal company in wooden boxes each containing twelve dozen of said paper boxes of squibs, and the company delivers them in these large original packages to the checkweighman for distribution, and they are not inspected by the company before they are delivered to the miners. At the close of all the evidence the court denied appellant's motion for peremptory instructions.

The declaration charges appellant in three counts with negligence in failing to exercise reasonable care in furnishing the deceased with a reasonably safe squib with a match free from powder or other explosive, so it would burn time enough to enable the deceased to reach a place of safety before it exploded the shot; and in neglecting to inspect the match or squib furnished to ascertain if it contained powder or other explosive in the match and was reasonably safe for use.

Appellant insists (1) that the trial court erred in refusing to direct a verdict in its favor; (2) that the court erred in its rulings on the instructions.

NOLEMAN & SMITH and W. F. BUNDY, for appellant.

CHARLES H. HOLT, CHARLES F. DEW, A. D. RODEN-BERG and L. B. SKIPPER, for appellee.

MR. JUSTICE DUNCAN delivered the opinion of the court.

In view of the conclusion reached by the court in this case it will only be necessary to consider the first cause urged by appellant for a reversal. James E. Thompkins the only one present when the deceased was killed testified that he was helping the deceased to fire shots in the mine as shot-firer and that he was about fifty feet from him when the shot exploded that killed the deceased; that he saw him go to the face to light the shot, saw him pull the needle, put the squib in the hole, take his light off his cap and reach over to light the squib and that the shot went off "just that quick" (almost instantly); that he did not see the squib lit because deceased's body was between him and the squib; that the shot put both their lights out, and that when he again lit his light he ran to the face and called the deceased first, and that when he did find him he was pretty close to where the witness was standing when the shot went off and that he was dead; that so far as he could see the deceased was firing this shot in the usual and proper manner, but that he could not see for the deceased's body just how the flame was applied to the match; that the deceased had been a miner for about five years and that he was mining when killed and shot-firing too after the day's mining was done, and that they both had been shot-firing for about ten months when the accident happened; that they got their squibs from the checkweighman at the coal company's office in the morning when they would go to work, and that they had an opportunity of seeing the squibs when they took them out of the pasteboard boxes and that the shot-firers carried them when firing

in a tin case; that Mr. Taylor, the deceased, had a like opportunity to see the squibs, and that in case they found a defective squib they threw it away, and that all the shot-firers judged for themselves whether or not the squib was all right and that no one else inspected them; that the only inspection they made was just simply to look at the squibs and that all good shot-firers determined whether the squibs were good or not by simply looking at them and that that was the only way they could determine whether or not the squibs were good; that the Powell squib is as good a squib as he knows of, and that if the company had inspected the squibs all they could have done in that way would simply have been by looking them over; that the squibs cannot be unrolled because glued, and that unrolling the match destroys the squib and that it would not be practicable to unroll them to inspect them. Four other shot-firers testified and all five of them say that it would not be possible to have an instantaneous explosion with those squibs if they were all right by applying the light either to the outer end of the match or to the shoulder of the squib; that it would require from one-half minute to a minute for the match when lit at the end and from ten to twenty seconds to explode the powder when lit at the shoulder, if in proper condition, and that in any case it would explode as soon as it burned through the tissue paper at the shoulder of the squib, that it never occurs that powder is jerked out of the hole with the needle and that the only way to set fire to the powder in the hole is with the powder in the squib; that it would not be practicable to inspect a squib by unrolling it and that the only way to inspect them is by looking over them with the eye. All of them that testify on the subject say that they all inspected them for themselves and threw away the bad ones, and that they could do this by simply looking them over and that they could readily do this by lamp light in the mine; that if there was powder in the match part

of the squib extending through it to the powder in the squib there would be almost an instantaneous explosion, but that such a condition could not be told by simply looking at the squib, but would require unrolling it to ascertain such a condition and that unrolling it would destroy its usefulness. One witness suggested that it might be done by an X-ray machine, but this was a mere supposition of his. The only evidence offered by the defendant was a single Powell squib proven to be like the one used by the deceased, also an original package of these squibs containing one hundred of them, and also a tin box or tube with a lid, about seven inches long and one and one-quarter of an inch in diameter, and proven to be such a box or tube as the miners carry these squibs in when shot-firing, all three of which exhibits have been certified with the record as original evidence.

From the foregoing evidence it is clear that the squibs used at defendant's mine are very simple instruments. The squibs that have been certified here as original evidence confirm all that is said of them by the witnesses. Anyone of ordinary intelligence that understands the nature of sulphur, black powder, tissue paper and paste, can, in a few minutes of observation, understand them thoroughly and be able to detect any defect in them that appears on the surface of the squibs. If there are any hidden or latent defects in the squibs, by reason of powder being in the match part of the squib, there is no character of inspection that is proven or pointed out in the record that will discover such a defect, without unrolling or going into the squib, and it is proven unquestionably by the evidence that such an inspection would be impracticable because it would destroy or tend to destroy the usefulness of the squib. There is no contest or dispute as to these matters. It is also established by uncontroverted evidence that it was the long established custom and usage at the mine, before and since the ''Shot-

Firers' Act," that the shot-firers do the inspecting of these squibs, and that the original packages of the squibs are not broken until the squibs are delivered to the shot-firers in the small packages of one hundred squibs per box. It is unquestioned that the shot-firers are as competent to make this inspection as any one, and that they do make all the inspection practicable by simply looking them over with the eye. The evidence does fairly prove in this case that the squib used by the deceased when he lost his life was defective. In what particular it was defective is not proven. Neither does it appear whether or not the blaze was properly applied to the match of the squib. In the view that we take of this case there is no liability against appellant for the death of the deceased. There is no rule of law under the evidence in this record, so far as we are able to see, whereby an action can be maintained against it. The sad death of this unfortunate man occurred by reason of an accident for which no one is to blame so far as the evidence discloses. Where the duty of inspection, as in this case, is imposed upon the employe and accepted by him, and the duty of inspection is simple and plain, such as can be performed by him by simply looking at the squibs, and the employe is clearly competent to make the inspection, the employer is clearly relieved from any duty to inspect, and consequently cannot be liable for a failure to make such inspection. C. & A. R. R. Co. v. Merriman, 95 Ill. App. 628; C. & A. R. R. Co. v. Bragonier, 119 Ill. 51; 1 Labatt's Master and Servant, sec. 416.

The master however can in no case relieve himself from a liability for failure to use reasonable care to furnish reasonably safe instrumentalities. It is also the duty of the servant under the law without regard to any rules upon the subject, that he shall see that the appliances or machinery with which he works and becomes familiar is in repair and has no open and obvious defects that may be discovered by simply looking

at them.   The T., W. and W. Ry. Co. v. Eddy, 72 Ill. 138.   Hence there can certainly be no objection under the law to a rule or custom, as in the case at bar, of imposing the duty of inspection upon the employe, so long as it does not extend to hidden or latent defects, such as the master is required to examine for when an examination and reasonable inspection will disclose the hidden dangers.

We are not disposed to hold that the fact that the appellant was receiving pay from the miners for the squibs necessarily puts it on the same footing as the merchant who might sell these appliances direct to the miners.   The appellant is furnishing this appliance to the shot-firers, and the law requires it to use reasonable care in selecting this appliance to the end that they are reasonably safe; and if they were of the character to require inspection by appellant, that is if there were hidden defects and dangers that could be discovered and avoided by a reasonable inspection, that it would be in duty bound to make the inspection.   But there can certainly be no negligence imputed to appellant where a defect is not discoverable by a reasonably careful inspection.   Sack v. Dolese, 137 Ill. 129.

The evidence fully proves that the make of the squibs in question was as good as any on the market, and no complaint is made on that score.   We think therefore that inasmuch as an inspection by appellant would have been impracticable and of practically no value to the shot-firer, as these squibs are of a nature that the more they are handled the more liable they are to become defective, and as the shot-firers would of necessity have had to inspect them again before using them, that appellant's duty was fully discharged in this case when it purchased as good squibs as the market afforded, and that there is no liability proved against appellant in this record.   1 Labatt's Master and Servant, sec. 153.

For the reasons indicated in the foregoing, the lower

·court erred in denying the motion of appellant to direct a verdict of not guilty. The judgment is therefore reversed without remanding.

*Reversed.*

Finding of fact to be incorporated in the judgment. We find as an ultimate fact that the appellant was not guilty of the negligence charged in any count of the declaration.