Peter Geiken, Appellant, v. Chicago Great Western Railroad Company, Appellee.

Gen. No. 39,207.

Opinion filed February 15, 1937.

ROYAL W. IRWIN, of Chicago, for appellant.

WINSTON, STRAWN & SHAW, of Chicago, for appellee; HAROLD A. SMITH and DOUGLAS C. MOIR, both of Chicago, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

Plaintiff brought suit under the Federal Employers' Liability Act to recover damages for injuries sustained while working for the defendant; at the close of all the evidence the court instructed the jury to find the defendant not guilty, and plaintiff appeals.

The complaint charged that defendant negligently furnished plaintiff with a spike maul which was dangerous and defective in that the head of the maul was too highly tempered and brittle, and that in using it there was danger of chips and particles flying off it, and that while using it a chip flew off striking plaintiff in the left eye.

April 25, 1932, plaintiff was employed as a sectionhand by defendant; at this time he was with one of his crew (Rakow) repairing a joint in the rails; Rakow was holding a claw bar up against a spike and plaintiff struck the bar with a spike maul; plaintiff testified that when he struck the claw bar a piece of steel flew from the spike maul striking his left eye, resulting in loss of sight in this eye; he testified that prior to this there were no apparent defects in the maul but after the injury he noticed there was a chip broken off from the face of the maul. This is somewhat at variance with a statement signed by him in which he said he had made no examination of the maul but that Rakow had told him he thought the chip came from the maul.

There are at least three reasons justifying the order of the trial court directing a verdict for the defendant. Mr. Gordon, testifying as an expert witness for plaintiff, said in substance that if there was no mushrooming or flattening out of the face of the maul and chips occurred on the edge of the face of the maul, it would indicate that the maul was too hard or the grain structure was brittle. The spike maul was introduced in evidence and is an exhibit before us. Inspection of it shows that the face is slightly mushroomed which, as the undisputed testimony shows, is consistent with a properly tempered maul. All of the expert testimony is to the effect that a mushroomed maul indicates proper tempering and no mushrooming indicates the application of a too high degree of heat with resulting hardness of the face of the maul, which is then likely to chip off.

All of the expert witnesses agreed that the Brinell test of the spike maul would indicate whether it was properly tempered, and that passing this test successfully indicates proper tempering and the proper degree of hardness. Mr. Akin, a metallurgist, testified as an expert for defendant that in February or March, 1933, he made a Brinell test for hardness of the spike maul in question and that the test showed the proper degree of hardness; he also testified that he made a microscopic examination of the maul and found that the grain structure was medium fine, which is suitable for a spike maul.

Counsel for plaintiff argues that the court improperly admitted evidence of the Brinell test, claiming that the maul was not in the same condition when tested as at the time of the accident. The maul was introduced on behalf of plaintiff who identified it as being the same maul and in the same condition with certain exceptions which he indicated. Plaintiff's counsel suggests that the maul had been reheated or its temper changed in some way, but this is only surmise; there

is no evidence whatever of any change in the temper of the maul.

It is not the law that exhibits must be identically the same as at the time of the accident. If slight changes are pointed out, as plaintiff did in the instant case, the exhibit is properly admitted. *Chicago & E. I. R. Co. v. Crose,* 113 Ill. App. 547. Moreover, the maul was in evidence without objection.

The uncontradicted evidence shows the defendant purchased the spike maul in question from the Warren Tool Co., which has manufactured and sold between 300,000 and 400,000 spike mauls in the last 10 years to virtually every railroad company in the country; it is the standard practice of this company to subject mauls to every degree of heat and to subject them to 3,000 full swinging blows. The vice president of this company testified that in the hardening and tempering process the company is endeavoring to get a tool that will fit the demands in the particular industry and that they are attempting to get a steel that will show a Brinell test of certain standard specifications which the railroads require.

The evidence shows that the maul in question was purchased in the usual course of business and there is no evidence of any negligence by defendant in this respect. Under such circumstances there can be no liability upon the defendant. In *O'Hara v. Brown Hoisting Machine Co.,* 171 Fed. 394, the plaintiff sustained an injury to his left eye by a piece of steel flying from a hammer with which he was striking a chisel, an accident much like that in the instant case; the court denied a recovery for the plaintiff saying ''that the sledge in question, together with many others, was obtained by the defendant from a tool manufacturing company of high standing, and there is nothing to indicate that when purchased it was not in all respects sound and perfect,'' and that there was no evidence

that any of the representatives of the defendant had, prior to the accident, any knowledge or suspicion that the sledge was in any way unsafe or defective. A similar accident was involved in *Middleton v. National Box Co.*, 38 F. (2d) 89; there the defective instrument was a chisel; the court entered judgment for the defendant, holding that there was no negligence shown upon the part of the master which caused the injury, and that if the chisel was improperly tempered the defendant had no knowledge of this superior to that of the plaintiff. In *Stankowski v. International Harvester Co.*, 180 Ill. App. 439, the plaintiff was injured in the eye by a chipping from a chisel; the court reversed a judgment for the plaintiff, holding that the employer has performed his duty when he exercises reasonable care to see that the tools furnished the employee are reasonably safe and sound. In *Herricks v. Chicago & E. I. R. Co.*, 257 Ill. 264, the plaintiff was injured in the eye by a piece of steel off a hammer; the court held defendant not liable, saying:

''It is the law that the master is not liable for a defect in a simple, ordinary tool procured and provided in the ordinary way. It is one of the essential facts to be proved by a servant seeking to recover on account of a defective tool or appliance, that he did not know of the defect and had not equal means with the master of knowing it; (*Goldie v. Werner*, 151 Ill. 551;) and as to a simple tool the opportunities of the servant for knowing of the defect are at least equal to those of the master. If the tool is procured by the master from another and there is a latent defect, neither one would know of it and the master would not be liable, and if there is a patent defect the servant has as good an opportunity to know of its existence as the master. This rule includes all common tools and appliances, such as hammers, wrenches, axes, hoes, spades and ladders. (Citing cases.) Neither is the master bound to

inspect simple tools furnished to his servant to discover whether defects appear in the course of their use. (Citing cases.) If any defect should appear in the course of use of such tool, the servant using it would have a better opportunity to discover it than the master."

Plaintiff says that defendant should have made tests of the maul before permitting its employee to use it. An inspection of the maul shows that such tests as are suggested would destroy its usefulness, as such tests require cutting pieces from it. Cases where it has been shown to be impracticable to apply tests which impair the usefulness of the implement are *Taylor v. Centralia Coal Co.,* 155 Ill. App. 324, and *Eaton v. St. Louis & N. R. Co.,* 173 Ill. App. 431.

Cases cited by plaintiff involve wholly different facts. *Schillinger Bros. Co. v. Smith,* 225 Ill. 74, involves the negligent construction of a scaffold. *Hess v. Rosenthal,* 160 Ill. 621, involves a cover of a vat improperly placed.

A spike maul is a tool, and in *Buaso v. Wells Bros. Co.,* 167 Ill. App. 574, where it was held that a sledge hammer was a simple tool, the court held that the inspection by an employer does not extend to such simple tools. See also *Chesapeake & O. Ry. Co. v. Kuhn,* 284 U. S. 44. And in *Cincinnati, N. O. & T. P. Ry. Co. v. Burton,* 184 Ky. 2, plaintiff sustained an eye injury through a small steel chip or scale; the court held that a verdict should have been directed as it was a matter of common knowledge that when a steel hammer is used with great force upon another steel implement small chips are likely to break off. See also *Osborn v. Chicago, R. I. & P. Ry. Co.,* 1 S. W. (2d) 181.

As the plaintiff failed to prove that the maul was improperly tempered and the evidence shows without contradiction that it successfully passed the standard test, the Brinell, and that the manufacturer from which

defendant purchased it was a reputable concern which used a high degree of care in the manufacture of its mauls, he failed to show any negligent act or omission by the defendant causing the injury, and the trial court properly directed a verdict for defendant.

The judgment is affirmed.

*Affirmed.*

MATCHETT, P. J., and O'CONNOR, J., concur.