James P. Hall, Appellee, v. Chicago and North Western Railway Company, Appellant.

Gen. Nos. 46,184, 46,201.

Opinion filed March 8, 1954. Released for publication March 24, 1954.

LOWELL HASTINGS, DRENNAN J. SLATER, and EDWARD WARDEN, all of Chicago, for appellant; GERALD M. CHAPMAN, of Chicago, of counsel.

JAMES A. DOOLEY, of Chicago, for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court.

The plaintiff, James P. Hall, brought suit under the Federal Employers' Liability Act (45 USCA 51–60) to recover damages for personal injuries sustained while

he was employed as a brakeman by the defendant, Chicago and North Western Railway Company, a common carrier engaged in interstate commerce. Following a jury verdict returned March 7, 1952 finding defendant guilty and assessing plaintiff's damages at $50,000, plaintiff moved for a new trial, which was allowed by the court. Defendant appealed from that order under section 77 of the Civil Practice Act [Ill. Rev. Stats. 1953, ch. 110, § 201; Jones Ill. Stats. Ann. 104.077], and on review we remanded the case with directions to reinstate or restore the judgment (*Hall v. Chicago & N. W. Ry. Co.*, 349 Ill. App. 175). The principal question involved on the first appeal was whether it was prejudicial error for defendant's counsel to advise the jury that any amount that might be awarded plaintiff by its verdict would not be subject to federal income tax. We held that it was not because the federal statute specifically so provides. On February 26, 1953, plaintiff filed a petition for leave to appeal to the Supreme Court of Illinois and pending the disposition thereof we stayed the mandate. Defendant filed a motion to dismiss that petition on the ground that the order granting a new trial was not a final and appealable order permitting an adjudication of defendant's motion for a judgment notwithstanding the verdict, and on May 14, 1953 plaintiff's petition for leave to appeal was dismissed. Subsequently, on May 29, 1953, the mandate issued by this court was filed in the superior court, the case was redocketed, and on June 4, 1953 a judgment was entered in favor of plaintiff pursuant to the mandate. Defendant then filed a notice of appeal from that judgment, but on June 9, 1953, on plaintiff's motion, the trial court vacated the judgment entered on June 4 and entered a new judgment. On June 9, 1953 the defendant filed notice of appeal from the new judgment entered on that day. Plaintiff then filed a

555

second notice of appeal which also appealed from the judgment entered on June 9, 1953. On June 12 plaintiff filed a notice of cross-appeal from the judgment entered June 4, 1953, and on June 18 he filed a second notice of cross-appeal from the judgment entered on June 9, 1953.

On this appeal the principal question presented is whether the evidence in the record, most favorable to plaintiff, together with any reasonable inferences therefrom, establishes a breach of duty owed plaintiff by defendant. Defendant insists that it does not, and that the trial court therefore erred in refusing to enter judgment in its favor, pursuant to the motion for judgment notwithstanding the verdict.

The injury for which recovery is sought was sustained on August 11, 1947 at the Nachman Company premises in Chicago, Illinois. Evidence adduced upon trial showed that defendant was a railroad carrier and as such delivered and picked up freight cars from Nachman Company on a track that leads into the latter's premises from the main-line tracks of the defendant. These premises are enclosed by an iron fence, and freight cars and locomotives enter through a gate. The track leading into the premises, running in a northerly and southerly direction, is curved as it enters, and by reason thereof the gatepost on the east side of the track is farther north than the gatepost on the west side. On the east side of the track and immediately to the south of the gate, Nachman maintains a freight platform approximately the height of the floor of a freight car, for the purpose of loading and unloading merchandise. This platform, which has been in existence for some thirty-five years, abuts the building. There is uncontroverted evidence that if part of it were cut off it would not be usable for loading and unloading purposes. It is undisputed that there was no room for a man to stand between this platform and a freight

car forty to fifty feet long; also, that on the north end of the platform, as one enters the gate, there was a large, legible sign, in all caps, bearing the legend "WARNING—NO CLEARANCE FOR MAN ON SIDE OF CAR."

From plaintiff's own testimony it appears that on the day of the accident the switch crew, of which he was a member, had two loaded freight cars for delivery to Nachman. Four empty boxcars which were on the track within the premises had first to be taken out. The two loaded cars were uncoupled and left standing outside the gate on the main track immediately adjacent to and west of the Nachman track. After he had uncoupled these two cars, plaintiff, together with the conductor, walked south through the gate and into Nachman's premises. Plaintiff testified that as he walked through the gate, he observed the freight platform and saw that the track was curved. The angle position of the gate was obvious, and the warning sign on the freight platform was clearly displayed; plaintiff stated, however, that he did "not believe [he] looked for a sign," although his duty as a switchman required him to familiarize himself with local conditions.

After entering the Nachman premises through the open gate, plaintiff continued, for a distance of several hundred feet, to the four cars that were standing on the Nachman track. The engine and caboose then came in and coupled onto these four cars. The engine was facing north and pulled ahead, with the tender, caboose and four cars following in that order. Plaintiff had taken a position on the bottom step on the east side and south end of the caboose. He testified that it was his intention to ride beyond the freight platform and gate, to get off the caboose outside the gate, and to go to the two cars that had been left standing there. Instead of looking at the freight platform or at the gatepost on the east side of the track, he was looking across the platform of the caboose, and when he saw the gate-

557

post on the west side of the track and the two cars, he got off, with his back to the loading platform, and was pressed between it and the car following the caboose. The train was moving about four miles an hour and stopped as soon as plaintiff fell. It was a clear day, but during the entire time plaintiff rode on the caboose he never looked north toward the freight platform, although if he had looked he could have seen it. It is undisputed that while he was riding on the step of the caboose he was in the clear of the platform and in a safe place. There is nothing in the evidence to indicate that plaintiff's work required him to get off opposite the platform or that anyone told him to get off there. The place opposite the platform was not a place to stand during switching movements or a place from which to give signals. As a matter of fact, plaintiff testified—and his testimony is uncontroverted—that he did not alight from the caboose for the purpose of giving signals but because he mistakenly believed that he was getting off outside the gate to go to the two loaded cars in anticipation of the next switching operation.

Plaintiff was an experienced switchman and was cognizant of the rule which required him to familiarize himself with close clearances. While riding the caboose, he told Thompson, another member of the switching crew but new on the job, to "ride high" on the cars because the platform would not clear. The foregoing facts were undisputed.

██ ██ Under the Federal Employers' Liability Act it is incumbent upon plaintiff to prove that defendant was negligent, and that such negligence in whole or in part was the proximate cause of the injuries. Contributory negligence and the assumption of risk are no longer defenses under the federal statute, except that contributory negligence may be taken into account by the jury in mitigation of damages. The complaint makes six charges of negligence. The first three, stated

in different form, allege in substance that defendant failed to exercise care to provide plaintiff with a reasonably safe place within which to work. The fourth is that defendant carelessly and negligently allowed switching operations on and along the track adjacent to the loading platform, although it knew or in the exercise of ordinary care should have known that such operations were hazardous to its employees. In the fifth charge it is set out that defendant carelessly and negligently operated, maintained and moved over the switch track two fifty-foot cars which were wider than the standard railroad car and thus approached more closely the platform in question; and the last charge asserts that defendant carelessly and negligently operated, maintained and controlled the cut of cars on which plaintiff was riding so that as a direct and proximate result thereof plaintiff was crushed between the platform and said cars.

■ ■ The principal evidence relied upon to support the charge that defendant failed to provide a reasonably safe place within which to work is the admitted fact that there was insufficient clearance to accommodate a person standing on the ground between the freight-loading platform and a freight car on the adjacent curved track. There was no evidence whatever that the platform was defective in any way, that the business of defendant could be performed with the platform in any different location or at any greater distance from the track, that a loading platform of practical use could be placed or located any differently from the one in question, or that the platform and its proximity to a curving track was not standard, customary and in general use. Other evidence relied upon by plaintiff is that the platform had been there for thirty-five years; that thirty-five years ago railroad cars were about eight foot eight in width and thirty-six to forty-two foot in length, whereas today the average

freight car measures ten foot six by forty to fifty; and it is argued that with a car some eight feet wide there would be two feet more clearance than with a ten-foot car. However, the proximate cause of the accident was neither the width nor the length of any of these cars; it was attributable to the fact that plaintiff stepped down from the caboose in a place where there was insufficient clearance. Judson H. Starr, called as a witness on behalf of plaintiff, testified that he had been a conductor for the defendant railroad for ten years and was then employed in the freight service; "I have ridden on the stirrup with a forty-foot car, I have ridden in there with a fifty-foot car too; the body of the car is dangerous against that platform, not the stirrup, not either end of the car, but the body swinging out." There is no countervailing proof; indeed, it is admitted that if plaintiff had stayed on the step of the caboose instead of alighting in the only place where there was insufficient clearance between the platform and cars on the adjacent track, he would not have been injured. As still other evidence to support the charge of negligence in failing to provide a safe place in which to work, plaintiff argues that the gate into the premises was on an angle, thus making it possible for one to be outside the gate at one post and within the premises at the other. This switching operation took place in clear daylight. Plaintiff testified that he walked through the open gate with the conductor; he did not say that he failed to notice the angle; and from photographs admitted in evidence it is inconceivable that he could have failed to observe it. Moreover, he had been engaged in switching operations in that area for about ten days, had passed the Nachman premises frequently, and the railroad rules required him to familiarize himself with conditions on the premises. Standing on the step of the caboose, plaintiff, looking straight across the caboose platform, saw the north gatepost and got

off, believing he was outside the premises. This unfortunate misjudgment by plaintiff certainly cannot be characterized as negligence on the part of defendant.

■ Under the provisions of the Federal Employers' Liability Act negligence is the gist of the employee's right of action against the employer. The Act does not make a railroad company an absolute insurer of the safety of the employee. *Wilkerson v. McCarthy,* 336 U. S. 53. Upon the uncontroverted facts heretofore recited, plaintiff bases his principal contention of negligence upon the proximity of the loading platform to the switch track. The gravamen of his argument is that defendant was negligent in failing to provide working space between the track and the freight platform. Federal and state cases uniformly hold otherwise. The facts in *Pankey v. Atchison, T. & S. F. Ry. Co.,* 180 Mo. App. 185, 168 S. W. 274, bear a strong analogy to the case before us and emphasize principles which are controlling. A judgment was there entered in the trial court for the administratrix of a brakeman who was crushed between a car and a freight platform. The reviewing court reversed the judgment. In that case both ends of the platform were sloped to form a ramp, but otherwise it was substantially the same as the platform in the case at bar. Pankey in his capacity as head brakeman was directing the engineer during the process of picking up cars from a side track. After walking down the track ahead of the backing train, he attempted to climb the side of the platform and was crushed by the boxcar at the head of the train. There, as here, negligence was charged because of failure to provide a safe place to work. In discussing this question the court observed that the platform was in good condition and of standard construction, being the same height and distance from the track as all platforms on defendant's road. The court then pointed out that it was not safe for employees to go between the platforms

561

and moving cars, and the evidence showed that they were not required to do so. This fact, in the opinion of the court, distinguished the *Pankey* case from decisions permitting recovery in cases of close-clearance situations in which the essential element was that the injured employee was where he could reasonably and rightfully be expected to be in the performance of his duties.

In *Sprankle v. Thompson* (Mo.), 243 S.W.2d 510, plaintiff, a switchman, being unable to release a hand brake by operating the brake wheel in the usual manner, climbed to the top of the car, got on his hands and knees and, while making an effort to release the brake, came into contact with a canopy extending over the switch track and was thrown to the ground. As one of the assignments of error, he contended that defendant was guilty of negligence in failing to provide him with a safe place in which to work. He had testified that it was common practice to take the position that he had assumed on the top of the car when the brake could not be released from the platform. In considering whether a submissible case had been made by plaintiff, the court observed that there was no evidence that the canopy was not reasonably necessary for the protection of perishable products during loading and unloading operations, or that the canopy could have been placed higher above the tracks without minimizing its protective value, or that its elevation above the tracks was less than that of canopies used for similar purposes, or that it was constructed or maintained in any manner contrary to approved engineering and railroading practices. Plaintiff there argued that negligence could be inferred alone from the proximity of the canopy to the top of boxcars passing under it. However, the court, quoting with approval from *Ford v. Dickinson*, 280 Mo. 206, 217 S. W. 294, held that " 'it is only when such structures are unnecessarily main-

tained in dangerous proximity to the track that such maintenance constitutes negligence,' " citing several supporting cases, and then proceeded to distinguish the facts in the case from situations where the hazard was not readily apparent or where the failure to give actual warning would justify an inference of negligence, or where an offending obstacle placed in close proximity to the track could have been moved to afford greater and safer clearance without impairing or interfering with operative railroad practices, and concluded by holding "that plaintiff did not make a submissible case on the sole basis of the insufficient clearance between the top of the boxcar and the canopy." In reaching this conclusion the court, again adopting the language of the *Ford* case, said that " 'in the practical operation of railroads there are, no doubt, many platforms and other structures, especially those used in connection with industrial plants, that are necessarily so close to the tracks that a brakeman or switchman cannot pass them in safety on the side of a moving car. That such situations are inherently dangerous is beyond controversy, but such dangers are incident to the operation of railroads, and do not arise from negligence.' " The court continued with the further pertinent observation that "it would seem unwise indeed to permit a lay jury to determine by pure conjecture and in total absence of evidence that the engineering and operative practices found in the instant case constituted negligence on the part of the railroad."

██ ██ To sustain plaintiff's contention in the case at bar one would have to infer from no evidence at all that permitting the platform to remain in close proximity to the switch track was contrary to good railroading practice. The only evidence of record is directly contrary. Plaintiff produced no evidence whatever that the situation here presented was uncommon. Obviously a platform for the purpose of loading and unloading

freight in and out of cars is far more efficient if it is located so as to have as small a space as possible between it and the cars on the track. Of course the close clearance created by such proximity gives rise to some danger, but not such as to be characterized as abnormal or extraordinary. The mere proof of a close clearance is not sufficient to warrant a finding of negligence. *Atlantic Coast Line R. Co. v. Powe,* 283 U. S. 401; *Davis v. Hand,* 290 Fed. 73, certiorari denied 263 U. S. 705; *Toledo, St. L. and W. R. Co. v. Allen,* 276 U. S. 165; and *Killian v. Pennsylvania R. Co.,* 336 Ill. App. 152 (Abst.), certiorari denied 338 U. S. 819. See also *Delaware, L. & W. R. Co. v. Koske,* 279 U. S. 7, where plaintiff sued under the Federal Employers' Liability Act for injuries sustained when he alighted from an engine and fell into a shallow drainage ditch between the tracks. In that case the court said that "the measure of duty owed by defendant to plaintiff was reasonable or ordinary care having regard to the circumstances. . . . There is no evidence that the open drain was not suitable or appropriate for the purpose for which it was maintained or that there was in use by defendant or other carriers any means for the drainage of railroad yards which involve less of danger to switchmen and others employed therein. Defendant was not bound to maintain its yard in the best or safest condition; it had much freedom in the selection of methods to drain its yard and in the choice of facilities and places for the use of its employees. Courts will not prescribe standards in respect of such matters or leave engineering questions such as are involved in the construction and maintenance of railroad yards and the drainage systems therein to the uncertain and varying judgment of juries. . . . The evidence is not sufficient to warrant a finding that defendant was guilty of any breach of duty owed to plaintiff in respect of the

method employed or the condition of the drain at the time and place in question."

 The Supreme and Appellate Courts of Illinois follow the rules enunciated in the federal decisions. In *Williams v. New York Cent. R. Co.*, 402 Ill. 494, the court expressly held that "in actions under the Federal Employers' Liability Act the rule for measuring the sufficiency and amount of evidence necessary to justify the submission of the case to the jury is that established by the Supreme Court of the United States . . ." In the early case of *Mobile & O. R. Co. v. Vallowe*, 214 Ill. 124, plaintiff, a brakeman employed by the railroad company, was injured by contact with a post which was one of a series located about one foot from the side of coal cars along the track. It was conceded that the posts were so near to the passing cars that a brakeman could not safely climb upon the side of a car while passing the posts, and that he would either have to get on the car at some other time or climb upon the end of the car. The only evidence of defendant's witnesses on this phase of the case was that the coal chute and the posts supporting them were properly constructed and were as far from the track as it was possible to locate them consistent with the efficient operation of the coal chute. Plaintiff brought suit against the railroad and a coal-mining company, but the latter was dismissed, and the cause proceeded against the railroad alone. In discussing the question of negligence MR. JUSTICE CARTWRIGHT said that "the defendant was bound to exercise ordinary care to provide a reasonably safe place for plaintiff to do his work, but if reasonable care was exercised and there was no fault or negligence on the part of defendant in having the posts near the track it would not be liable merely because there was danger. If the defendant furnished as good and safe a place to work as reasonably could be furnished it would not be guilty of negligence. The

operation of trains is attended with danger, and liability in such a case does not depend upon the presence of danger, but upon the existence of negligence on the part of the employer. (3 Elliott on Railroads, secs. 1268, 1308.) It was not sufficient to show danger on account of the location of the posts, but it was also necessary to show that danger arose from some fault or negligence of the defendant. The cases where railroad companies have been held liable for injuries resulting from posts or structures near the track have been where negligence was imputed to them. In *Chicago, Burlington and Quincy Railroad Co. v. Gregory,* 58 Ill. 272, the ground of liability was that the mail-catcher was negligently placed so near the track as to be a source of danger when it might have been more distant. In *Chicago and Iowa Railroad Co. v. Russell,* 91 Ill. 298, the telegraph pole was permitted, by the negligence of the railroad company, to be in dangerous proximity to the track. So, also, in *Chicago and Alton Railroad Co. v. Howell,* 208 Ill. 155, the liability depended upon the negligence of the defendant both in respect to the proximity and kind of switch stand. There was no evidence tending to show that the defendant was guilty of negligence in having the posts where they were, but the only evidence was that it was not guilty of any negligence in that respect." The same reasoning and conclusion is justified upon the record in the case at bar. In the *Vallowe* case the court proceeded to state that defendant might be guilty of negligence in failing to warn plaintiff of the danger, as alleged in the declaration, but held that "if the plaintiff had, or by the exercise of reasonable care on his part would have had, knowledge of the situation of the posts and the danger, the defendant would not be liable to warn and instruct him against such danger, (*Herdman-Harrison Milling Co. v. Spehr,* 145 Ill. 329,) but if the danger which was known to the defendant was un-

known to the plaintiff and would not be ascertained by him in the exercise of ordinary care and prudence, it became the duty of the defendant to give warning, and for a failure to do so it would be liable. (*Chicago and Alton Railroad Co. v. Kerr,* 148 Ill. 605.) If the danger was unknown to the plaintiff and was not obvious to one exercising ordinary care there might be a liability. On these questions the evidence was contradictory."

■ In the instant proceeding there is no allegation whatever of lack of notice on the part of the railroad company to plaintiff. Moreover, it was plaintiff's duty to familiarize himself with the premises. A special rule of the company, with which plaintiff admitted being cognizant, provided that "on the road, at stations, in yards, and on industrial tracks there are buildings, structures, station platforms, canopies, mail cranes . . . and other obstructions which owing to local conditions or requirements do not give clearance to men on top or side of cars or engines. Employees must familiarize themselves with these conditions in the district in which they are employed and where they exist must not extend any part of their bodies out from engines or cars or attempt to alight therefrom." That plaintiff was familiar with the rule, and that he was aware of the close proximity of the platform to the switch track is indicated by the undisputed evidence of Thompson, a member of the switching crew, that plaintiff had told him to "ride high" on the cars because the platform would not clear. Upon this state of the record a failure to warn plaintiff was not an issue under the pleading; and the evidence definitely refutes it. Likewise, in *Chicago Term. T. R. Co. v. Schiavone,* 216 Ill. 275, a railroad was held not negligent when a section hand, sitting on a flat car with his feet hanging over the edge, was brushed off when one of his feet came in contact with a cattle-guard fence. The fence was properly constructed, and the court held that it

was necessary that it be constructed as it was in order to be effective. Some recent decisions by the Appellate Courts of this State, in which these rules have been considered and followed, are *Geiken v. Chicago Great Western R. Co.*, 289 Ill. App. 45; *Killian v. Pennsylvania R. Co.*, 336 Ill. App. 152 (Abst.); *Kloetzer v. Louisville & N. R. Co.*, 341 Ill. App. 478 (Abst.); *Payne v. Baltimore & Ohio R. Co.*, 351 Ill. App. 186, and *Pitrowski v. New York, C. & St. L. R. Co.*, 1 Ill.App.2d 63. In the *Payne* case it was charged that defendant did not provide a safe place to work. After reviewing various Federal decisions, the court observed that "the cited cases . . . are conclusive that, in the absence of violation of a statute, negligence of defendant is essential to justify a plaintiff's verdict in F. E. L. A. cases," and held that it is for the court to decide whether there is such evidence.

Plaintiff takes no exception to defendant's statement of facts; rather, there is agreement as to what the facts surrounding plaintiff's injuries were, and therefore nothing is left to inference or conjecture. The only question presented is if reasonable minds could differ as to whether these facts failed to show negligence on the part of defendant. In order to recover, a plaintiff charging negligence must adduce evidence in support of his charge and, as was said in *Eckenrode v. Pennsylvania R. Co.*, 164 F.2d 996 (aff'd 335 U. S. 329): "Any Federal Judge who sees these railroad accident cases come in and go out of the courts must be troubled by the unsatisfactory social results obtained. Some claimants go out with very large verdicts. Others go out with nothing. Yet in each case the injury has come as part of the business of train movement and the disastrous consequences upon the victim or his family are equally heavy. But so long as the law is that the defendant must be negligent for the plaintiff to recover for his injuries it is our respon-

sibility to apply the negligence test honestly and not to pretend that there is negligence when it does not exist." The responsibility of the court in applying the negligence test honestly is aptly stated in *Brady v. Southern Ry. Co.*, 320 U. S. 476, as follows: "Only by a uniform federal rule as to the necessary amount of evidence may litigants under the federal act receive similar treatment in all states. [Citing Supreme Court decisions.] . . . The weight of the evidence under the Employers' Liability Act must be more than a scintilla before the case may be properly left to the discretion of the trier of fact—in this case, the jury. [Citing Supreme Court decisions.] When the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict, the court should determine the proceeding by non-suit, directed verdict or otherwise in accordance with the applicable practice without submission to the jury, or by judgment notwithstanding the verdict. By such direction of the trial the result is saved from the mischance of speculation over legally unfounded claims. [Citing Supreme Court decisions and other authority.]" This rule was likewise followed in *Moore v. Chesapeake & O. R. Co.*, 340 U. S. 573, and *Reynolds v. Atlantic Coast Line,* 336 U. S. 207, in the first of which the direction of a verdict for failure to prove negligence was affirmed, and in the other a demurrer was sustained for failure of the complaint to state a cause of action as to negligence. In the *Moore* case the court said that "to sustain petitioner, one would have to infer from no evidence at all that the train stopped where and when it did for no purpose at all, contrary to all good railroading practice, prior to the time decedent fell, and then infer that decedent fell because the train stopped. This would be speculation run riot. Speculation cannot supply the place of proof." The application of this rule by federal courts of review is

illustrated in *Kaminski v. Chicago River & Indiana R. Co.*, 200 F.2d 1, and *Wetherbee v. Elgin, J. & E. Ry. Co.*, 204 F.2d 755, where the evidence of negligence was held insufficient for submission.

██ Plaintiff cites some forty Federal and Illinois cases purporting to hold that the issue of defendant's negligence is pre-eminently one of fact. It is sound law that when there is any evidence of negligence, taken in its aspect most favorable to plaintiff, together with any reasonable inferences therefrom, the case should be submitted to the jury. But plaintiff in effect argues what MR. JUSTICE MAJOR, in *Griswold v. Gardner*, 155 F.2d 333, so reluctantly concluded—that "any detailed review of the evidence in a case of this character for the purpose of determining the propriety of the trial court's refusal to direct a verdict would be an idle and useless ceremony in the light of the recent decisions of the Supreme Court. This is so regardless of what we might think of the sufficiency of the evidence in this respect. The fact is, so we think, that the Supreme Court has in effect converted this negligence statute into a compensation law thereby making, for all practical purposes, a railroad an insurer of its employees." But some three years later, the Supreme Court, in *Wilkerson v. McCarthy*, 336 U. S. 53, took occasion to specifically refer to JUDGE MAJOR's reading of its decisions and to repudiate such an interpretation. We have carefully studied plaintiff's authorities; in substantially all of them there was submissible evidence of negligence. The discussion by plaintiff's counsel presents a partial summary of the facts in a given case, followed by abstract propositions of law—all indisputable but here inapplicable. Some detailed consideration of plaintiff's authorities will illustrate their divergence from the case at bar. In *Kanawha Railway v. Kerse*, 239 U. S. 576, the quotation which appears in plaintiff's brief indicates that there was unquestioned

negligence—not a determination that negligence was a question for the jury. In *Choctaw, Oklahoma & C. R. Co. v. McDade*, 191 U. S. 64, plaintiff's intestate was struck and killed by the overhanging spout of a water tank adjacent to the track. After pointing out that the evidence showed that the spout hung at an angle from the side of the tank, the court observed that "a proper construction of the tank and appliances required the spout to hang vertically when not in use," and the opinion specifically noted that the testimony was clear that if the tank had been properly constructed there would have been no necessity to bring the spout near enough to the cars to endanger brakemen stationed on them. *Ellis v. Union Pacific R. Co.*, 329 U. S. 649, is cited for the proposition that a case for the jury exists even if the facts are without dispute; but an examination of the opinion discloses that there was a sharp conflict as to all the material facts, the court expressly stating that it was a case involving controverted facts. In *Texas & P. R. Co. v. Swearingen*, 196 U. S. 51, the court held that a railway company cannot be said, as a matter of law, to have performed its duty to use due care to provide a reasonably safe place for the use of switchmen in its employ when it has located scales where the tracks were only the standard distance apart, leaving a space of under two feet for the movements of a switchman—encumbered with a signal lantern—between the side of a freight car and the scale box, especially if the necessity of the situation did not require the scales to be constructed in that way. Under such facts the case was clearly one for the jury. In *Stanczak v. Pennsylvania R. Co.*, 174 F.2d 43, the evidence disclosed that in addition to close clearance, the loading platform involved was old, had become worn, and had ragged and uneven edges, while the caboose in question had a worn and decayed platform. Aside from the question of clearance between the loading

571

platform and the tracks, the court pointed out the additional relevant evidence of defects in the loading platform and the caboose platform, which made the question of negligence properly submissible to the jury. Furthermore, there was an issue of fact as to whether the accident was caused by plaintiff's leaning out toward the platform or by some other cause—it was a death case with no eyewitnesses, and evidence as to the exact cause was not available. In *New York, C. & St. L. R. Co. v. Boulden,* 63 F.2d 917, plaintiff was awarded damages for personal injuries sustained when he stepped from a boxcar to a station platform, his foot striking a projecting post at the edge of a cinder platform. He charged negligence, and the court held that whether under all the circumstances the projecting post constituted a risk normally incident to plaintiff's employment was a question concerning which intelligent men might disagree, and the case was therefore properly submitted to the jury. *Werner v. Illinois Cent. R. Co.,* 309 Ill. App. 292, was an action for injuries sustained by a brakeman whose leg collided with a dwarf signal located near the track, while he was riding the stirrup of a freight car. The court held that where there was no practical necessity for the maintenance of the signal at that point and where the evidence was undisputed that it could have been moved or lowered, the negligence of the defendant railroad in maintaining such a signal with only a ten-inch clearance was a question for the jury. A railroad owes a continuous duty to its employees to provide them with a reasonably safe place to work, but, in the language of the *Werner* opinion, "in fixing the scope of such duty, courts have kept in mind that the work of a railroad is attended with danger and can only be carried on by means that are hazardous and dangerous to employees who engage in such employment." The court went on to point up

the specific obligations of a railroad by saying: "It is well settled that this duty is violated by the company where structures, obstructions or appliances are permitted to exist or are maintained at or near the railroad tracks so as to endanger employees passing on cars in the course of their duties *where no practical necessity exists for permitting such dangerous conditions to remain and where it only requires the exercise of due care to make such dangerous conditions safe.*" (Emphasis supplied.) In discussing the authorities cited by defendant in that case, the court's basis for distinction is noted in the opinion as follows: "These cases, for example, *Chesapeake & O. Ry. Co. v. Leitch,* 276 U. S. 429, are based on the ground that where railroads are compelled to adopt and maintain appliances and structures at or near their tracks because of practical necessity, it is unreasonable to throw the risk and danger incident to the use of such appliances and structures on the railroad." Obviously the case at bar falls within the exception noted by the court in the *Werner* case, since the record here is devoid of any showing how the Nachman premises could be maintained in any other way; actually it would have been impractical to do anything else in view of the limitations of space involved.

 Proof of negligence is sometimes clear and convincing; in instances where it is doubtful, it is clearly a question for the jury; but under the authorities, including the most recent pronouncements of the federal and state courts, negligence remains the test of liability. As demonstrated, there is no proof of negligence in the case at bar. The only evidence adduced upon the trial refutes the argument that the loading platform on the Nachman premises could, in keeping with sound railroad practice, have been constructed in any other way or farther from the switch track; and in the absence of evidence the jury should not be per-

mitted to speculate upon problems of railroad engineering practice. Inasmuch as plaintiff failed to introduce evidence of negligence under any of the charges contained in the complaint, the court should have entered judgment notwithstanding the verdict; accordingly, the judgment of the superior court is reversed and the cause remanded with directions to enter judgment in favor of defendant. Plaintiff's cross-appeal is dismissed.

*Judgment reversed and cause remanded with directions. Cross-appeal dismissed.*

NIEMEYER, P. J. and BURKE, J., concur.