**KAMINSKI v. CHICAGO RIVER & INDI-
ANA R. CO.**

No. 10603.

United States Court of Appeals
Seventh Circuit.

Nov. 6, 1952.

Rehearing Denied Jan. 5, 1953.

Wayne M. Hoffman, Marvin A. Jersild, James F. Ward, Chicago, Ill., for appellant.

Edward L. Richter, R. N. Wyckoff, Chicago, Ill., James C. Murray, Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and KERNER and FINNEGAN, Circuit Judges.

FINNEGAN, Circuit Judge.

Appellant, Chicago River and Indiana Railroad Company, defendant below, seeks a reversal of a judgment for $50,000 based on a verdict against it in an action brought by plaintiff-appellee under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. It contends that the trial court erred in denying motions to direct a verdict for the defendant made at the close of plaintiff's case and after the close of all the evidence; that there was like error in denying its motion for judgment non obstante veredicto. It is further urged that the District Court erred in its instructions to the jury, and that a new trial should be granted because the verdict was so excessive as to imply passion and prejudice on the part of the jury.

There is practically no dispute between the parties as to the facts disclosed by the record.

On April 4, 1950, Roman W. Kaminski, plaintiff and employee of the defendant, began to work at midnight as conductor in charge of a switch engine and crew in the neighborhood of 40th Street and Ashland Avenue, Chicago, Illinois. One of the industries to be served that night by plaintiff's crew was the Phoenix Metal Cap Company. Its industry track known as Phoenix No. 1 extended inside the building of the company. At about three a. m. on the date in question, this track held five or six cars of which one and one-half cars were on the track inside the building itself. Plaintiff walked along a pathway or lane two and one-half feet wide between the cars and the loading dock while checking the car numbers on the side of the cars. It was dark and no lights were lit in the building. However, plaintiff carried a standard switchman's lantern which he used to see his way and to check the car numbers. Plaintiff had walked across this same path or lane on previous nights and had also been there during the daytime. He testified that the walk looked the same as it always had on previous occasions. He stated that on the night of the accident he watched the ground in front of him as he always did, and that he suddenly fell through something and landed in the space below the ground level, which had previously been used by the Phoenix Company as a coal pit but which on this date, and for about a year, had been empty. Plaintiff was alone at the time, and there were no other eye witnesses.

After the accident, it was discovered that there was a hole about two to two and one-half feet square partially covered with some material about three-eighths of an inch thick, which was thought to be either wood or cardboard or something of that sort. The hole was at a point about the middle of the car farthest inside the building. The track inside the Phoenix Company building was owned and maintained by the Phoenix Company.

The violation of the Federal Employers' Liability Act alleged in the complaint is that the defendant failed to exercise reasonable care to give plaintiff a reasonably safe place to work. This theory is expressed in various ways in support of charges of negligence in the complaint, one of which is that the defendant failed to light the premises in and about where the plaintiff was required to work.

Plaintiff was forty-three years of age at the time of the trial and had been continuously employed as a switchman and later on as a conductor for about twenty-four years. He had been injured about three or four years prior to the accident in question, at which time he suffered several broken ribs and was forced to remain at home for about thirty days. On the night of the accident here in question, the plain-

tiff fell a distance of about seven feet onto a cement floor. He was taken to Mercy Hospital where he remained for fifty days, being, during that time, under the care of Doctor Claridge. Five doctors testified in the case, three for the plaintiff and two for the defendant. In substance they all stated that plaintiff suffered a fracture of a bone of the left shoulder and a fracture of a bone of the left wrist. However, there was a rather sharp disagreement as to the extent of plaintiff's disability. Doctor Claridge testified that on July 12, 1950, plaintiff was sufficiently recovered to return to work. He testified that x-rays taken on September 12, 1951 showed a piece of bone extending below the glenoid in the left shoulder, which was an abnormal condition. However, in his opinion, this condition only slightly interfered with the use of the shoulder.

Doctor Wells stated that the shoulder would cause weakness and limitation of motion. However, the limitation of the wrist would not be very extensive, in his opinion.

Doctor Miller estimated a limitation of motion of the left shoulder of about 30 to 35% and of the wrist of about 30 to 40%.

Doctor Mitchell made an estimate of disability substantially the same as that of Doctor Miller.

Doctor Scuderi's estimate of plaintiff's disability was slightly less than that made by Doctor Miller.

The Federal Employers' Liability Act provides that a railroad carrier, while engaged in interstate commerce, shall be liable in damages to any employee for injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment. 53 Stat. 1404, 45 U.S.C.A. § 51.

In Wetherbee v. Elgin, Joliet & Eastern Ry. Co., 7 Cir., 191 F.2d 302, at page 306, this court said:

"It will be observed that the act imposes liability if the injury to the employee resulted in whole or in part from the carrier's negligence. If there is evidence to sustain a jury finding that defendant's breach is a 'contributing proximate cause' of the injury, a verdict for the plaintiff will be sustained. Carter v. Atlantic & St. Andrews Bay Railway Co., 338 U.S. 430, 435, 70 S. Ct. 226, 94 L.Ed. 236. But the act does not make a railroad company an absolute insurer against personal injuries suffered by its employees. Wilkerson v. McCarthy, 336 U.S. 53, 61, 69 S. Ct. 413, 93 L.Ed. 497. The questions remain, Was the carrier negligent, and if so was such negligence a proximate cause of plaintiff's injuries? Tiller v. Atlantic Coast Line Railroad Co., 318 U.S. 54, 67, 63 S.Ct. 444, 87 L. Ed. 610. Negligence still is the test of liability."

In the instant case, the defendant did not own, maintain, or control the premises upon which the accident occurred. The track inside the building or alongside which the plaintiff fell was owned and maintained by the industry. The defendant's sole duty to plaintiff was to exercise reasonable care to furnish him with a reasonably safe place to work. It was not an insurer of plaintiff's safety. The mere fact, therefore, that plaintiff sustained an injury does not render defendant liable. Atlantic Coast Line R. Co. v. Dixon, 5 Cir., 189 F.2d 525. Since the test of liability in this case is negligence, the burden of proving defendant's negligence was on the plaintiff. In other words, he must establish that some negligence of the defendant caused, in whole or in part, the injury of which he complains.

Here the evidence is that plaintiff himself had walked safely on this identical path or lane on many previous nights. He had looked at the lane and the path he was traveling on the night in question, and had noticed nothing unusual or unsafe. On that night he carried a light. He was watching where he was going and he could see where he was going. He testified that he saw nothing unusual or unsafe. He suddenly fell through the hole which he had never seen before. There was no evidence

whatsoever in the record as to how long the hole had been in existence there. It could not have been in existence very long because plaintiff himself had walked safely and without observing any hole or any unsafe condition over the same path on previous nights. There is nothing in the record to indicate that the condition which caused plaintiff's fall had existed for more than a short time before the accident.

Before defendant can be charged with negligence in failing to remedy the condition which caused plaintiff's injury, or failed to warn plaintiff of the existence of such a condition, it is necessary to establish that the defendant had actual knowledge of the condition, or, in the exercise of ordinary care, should have known of its existence. The record in this case clearly establishes that such circumstances did not exist here. The only inference that can reasonably be drawn from this record is that the condition which caused the accident had been created within a short time before plaintiff's injury. It may have been a matter of minutes or of hours, hence defendant cannot on this record be charged with constructive knowledge of the condition.

In Small v. Ralston-Purina Co., Mo.App., 202 S.W.2d 533, 537, 539, an employee of a railroad was injured while at work inside the plant of the Ralston Company.

He was inspecting railroad cars; he saw a plank lying (apparently flat) upon the ground. He stepped on the plank and a pebble under the plank caused it to move which in turn caused plaintiff to fall and sustain the injuries sued for. Plaintiff had never seen the plank before—it was not there on the preceding day. In holding that the carrier's motion for a directed verdict should have been allowed, the court said in 202 S.W.2d on page 537:

"There is no evidence whatever in this case as to who placed the board alongside the railroad track; there is certainly no proof whatever that Terminal or any of its employees placed the board where it was found, or knew that it was there. There could be no inference that the board was placed there by the Terminal, it not being the occupier or owner or in charge of the premises. The premises belonged to and were occupied by Ralston, and the only connection Terminal had with the premises, so far as the evidence goes, was to push or shunt cars into Ralston's premises, and take therefrom loaded cars. Under such circumstances Terminal may not be held liable in the absence of proof that it actually knew that the board was there and created a dangerous condition, or that it had been there long enough to have charged Terminal with constructive knowledge, and so knowing failed to instruct or warn its servant, the plaintiff. There is no proof as to whether the board had been there one minute, one hour or one day. The law is established that in order to require an employer to warn and instruct the employee, the danger must be one known to the employer and unknown to the employee. In no event was there any liability established on the part of Terminal for failure to provide its servant with a safe place to work, or failure to warn him of an unsafe condition, and hence its motion for a directed verdict should have been sustained."

In the case at bar, we are convinced that the trial court should have directed a verdict for the defendant-appellant. As a consequence, its motion for judgment non obstante should have been allowed. Montgomery Ward & Co. v. Duncan, 311 U.S., 243–251, 61 S.Ct. 189, 85 L.Ed. 147.

Our conclusion makes it unnecessary to enter upon a detailed examination and discussion of appellant's remaining contentions. Considered as a whole the trial court's charge to the jury was fair to appellant and we find in it no error that would justify reversal and remand of the case. The remaining claim that the damages awarded in the verdict are so excessive as to indicate passion and prejudice on the part of the jury is answered by what we said in Wetherbee v. Elgin, Joliet & Eastern Ry. Co., hereinbefore cited. In that case this court indicated quite strongly that it agreed with a similar contention in a pro-

-ceeding under the Federal Employers' Liability Act, but said 191 F.2d on page 309:

"This court has adhered to the rule that it will not review a judgment for excessiveness of damages. Buchanan v. Chicago & N. W. Ry. Co., 7 Cir. 159 F.2d 576; Larsen v. Chicago & N. W. Ry. Co., [7 Cir., 171 F.2d 841]; Fritz v. Pennsylvania R. Co., 7 Cir., 185 F.2d 31. We also have held that passion and prejudice of the jury will not be inferred from the mere excessiveness of the award. Larsen v. Chicago & N. W. R. Co., supra."

Because the trial court erred in refusing to grant appellant's motions to direct a verdict in its favor, the judgment of the District Court is reversed and remanded with directions to enter judgment for defendant.