## WETHERBEE v. ELGIN, J. & E. RY. CO.

### No. 10631.

United States Court of Appeals
Seventh Circuit.

March 20, 1953.

Rehearing Denied May 22, 1953.

Lloyd T. Bailey and Michael H. Lyons, Chicago, Ill., Bailey & Lyons, Chicago, Ill., of counsel, for appellant.

Harlan L. Hackbert, Chicago, Ill., Knapp, Cushing, Hershberger & Stevenson, Chicago, Ill., of counsel, for appellee.

Before FINNEGAN, LINDLEY and SWAIM, Circuit Judges.

FINNEGAN, Circuit Judge.

This is the second appearance of this case on the docket of this court. On May 23, 1951, we reversed a judgment in favor of the plaintiff and remanded the cause for a new trial. 191 F.2d 302.

On the retrial in the District Court, the presiding judge, at the close of plaintiff's evidence, directed that the jury find for the defendant, and on the return of such verdict, entered judgment for the defendant and against the plaintiff. A motion for a new trial was made and overruled. This appeal resulted.

Appellant insists that the trial court erred in directing a verdict for the defendant. The defendant-appellee, on the other hand, asserts that our opinion reported in 191 F.2d 302 precludes the plaintiff from recovering under the facts and circumstances appearing of record in this case.

■ The defendant-appellee, at the time this appeal from the second trial was docketed, moved in this court to dismiss the appeal. The ground of his motion was that the appeal was in reality an appeal from an order overruling a motion for a new trial. The notice of appeal itself states that appellant appeals, "from the judgment entered in this action," on March 21, 1952. The fact is that the judgment was entered some time in January of 1952, and it was not until March 21, 1952 that the motion for a new trial was disposed of. Under the circumstances we feel that appellee was not misled or prejudiced in any way. The mistake as to the date of the entry of the judgment appealed from was immaterial. Martin v. Clarke, 7 Cir., 105 F.2d 685, 124 A.L.R. 497; Shannon v. Retail Clerks' Ass'n, 7 Cir., 128 F.2d 553; Wilson v. Southern Ry. Co., 5 Cir., 147 F.2d 165.

That leaves for discussion the propriety of the ruling of the District Court on the motion to direct a verdict for the defendant. In our opinion disposing of the first appeal, we considered in detail the defendant-appellee's motion for a directed verdict in that case. We examined the evidence at length. From that examination this court determined that there was no evidence in the record which would warrant a finding that the defendant railroad negligently placed the board which caused the derailment upon or alongside the track, or carelessly allowed it to remain in such spot. We examined also the contentions of the defendant that the fellow employees of the plaintiff, in the switching operation during the course of which the accident happened, were negligent, and that as a result of their said negligence the defendant did not furnish plaintiff with a safe place to work.

■ We were unable to find any evidence of negligence on the part of the engineer or of the fireman. We were likewise unable to find evidence that disclosed or permitted the inference of negligence on the part of the foreman in charge of operation, or on the part of the section foreman. As to the remaining fellow employee, we said:

"After Venske, the remaining member of the crew whom plaintiff charges with negligence, had signalled for the engine to back up on track K, his next duty was to protect the crossing on north J track just south of the loading dock. The evidence is uncertain as to what course he took between the two points. Plaintiff argues that there was a reasonable basis in the evidence for the jury to have found that Wetherbee felt secure in the belief that Venske, a switchman of 27 years experience, would, in preceding the cars down the track, perform his duty to determine whether the track was safe for the subsequent movement of the cars. Plaintiff also asserts that by placing a ruler on the map in evidence, to show a line between the point where Venske started toward the crossing and the point on the west rail of north J track where he stopped, the line would designate a course within 5 to 7 feet of the west rail on north J track at the point of derailment. Venske testified, 'So when I kept walking down that way, I looked over. I couldn't see any obstructions or anything.' He also was asked, 'You walked directly from that point down to this point?' and his answer was, 'Yes sir.'

"Though Venske's testimony was indefinite on this important point, we think the evidence was sufficient to take the case to the jury, and that the inference that Venske did pass within 5 to 7 feet of the board on the track was permissible. O'Day and Harrington each testified that it was the duty of all members of the crew to watch the surroundings and to keep a lookout at all times for debris and obstructions along the track. It was therefore a permissible conclusion that Venske's failure to notice the obstruction on the track constituted negligence which proximately caused the injuries to decedent. The inference is also permissible that Venske did precede the cars down north J track to the crossing. On another trial the evidence might show that Venske did not in fact walk a course near the north J track or that he did not precede the cars down

the track, but on this appeal we may only consider the record before us.
* * *"

In our consideration of the ruling of the District Court in directing a verdict for the defendant we must be guided by our former findings, as modified or explained by any evidence introduced on the second trial.

■■ We can find no substantial change in the present record which would induce us to alter our opinion as to negligence on the part of the engineer, the fireman, section boss, or foreman in charge of the operation during which this accident occurred.

As might be expected, however, the testimony of the remaining member of the crew, Venske, was much more detailed on the second trial. It appears from his evidence that after he coupled the engine to the two cars on the K track and the switching movement started to move back across the switch in order to proceed down the J track, Venske walked south on the K track to a small fire-house, skirting a puddle of water, and then walked diagonally across to the road crossing, walking along nearly parallel with the J track. Venske states that he did not walk on the J track and was no closer than 40 or 50 feet to J track as it passed in front of the concrete dock. The District Court then permitted appellant's counsel to examine Venske as an adverse witness and to read the questions put to him and the answers made at the former trial when he stated in effect that he walked "directly" from a mark he had made on the plat to the road crossing, he stated that he did not understand that the question called for an answer whether he walked on an absolutely straight line.

As the record now stands, there is nothing in Venske's evidence that would establish or support the inference that he should or could have seen the board which caused the derailment. On the second trial the appellant likewise introduced for the first time two rules numbered 106 and 146 of the defendant carrier. Rule 106 provides: * * * "both the conductor and the engine man are responsible for the safety of the train and the observance of the rules, and under conditions not provided for by the rules, must take every precaution for protection."

Rule 146 is in the following language:
"Before shoving cars into any track employees must ascertain whether or not the work can be done safely. When coupling on to or moving cars on any loading, unloading or repair track, he must walk along the track in advance of the cars and make sure that all men are out of the way and any obstructions removed. Cars must not be kicked into any loading, or unloading track, or any track where men are working, either on the track or close to same, except where the supervisor in charge of the work has notified the crew that it is safe to do so."

Appellant strongly insists that these rules were violated and that such violation was the proximate cause of the accident. We cannot agree that rule 146 was applicable.

An examination of the rule makes it apparent that it applies only in instances where cars are being moved along or upon loading, unloading or repair tracks. There is nothing in this record to show that at the time and place of the unfortunate occurrence the J tracks were being used for repair purposes or for loading or unloading. The obvious object of rule 146 is to protect men working about the car under repair, or working in or about cars being loaded or unloaded, and also to protect against collision with equipment which might be in use by such workers. In the case at bar, the track J was not a repair track and it was not being used for loading or unloading purposes. It appears to us that the rule applicable to the situation presented in the present record was rule 103, which we considered and cited in our previous opinion. 191 F.2d 302. In that opinion we also pointed out that appellant's intestate was guilty of contributory negligence because he did not maintain a sharp lookout ahead in a situation where nothing obstructed his view and where if he looked he would have seen the board which caused the derailment.

758

We are obliged to conclude that the District Court properly directed a verdict for the defendant, and that the judgment appealed from must be affirmed.