## SHENKER v. BALTIMORE & OHIO RAILROAD CO.

No. 414.   Argued April 17, 1963.—Decided June 10, 1963.

*Charles Alan Wright* argued the cause for petitioner. With him on the brief were *John Ruffalo* and *James E. McLaughlin.*

*Alexander H. Hadden* argued the cause and filed a brief for respondent.

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

The petitioner brought an action under the Federal Employers' Liability Act, 45 U. S. C. §§ 51–60, in the Federal District Court for the Western District of Pennsylvania to recover for injuries caused by the alleged negligence of the respondent Baltimore & Ohio Railroad (B&O) and the Pittsburgh & Lake Erie Railroad (P&LE). At the close of the evidence, the District Court directed a verdict in favor of the P&LE on the ground that the evidence failed to establish that the petitioner was an employee of that company as required by § 1 of the Act (45 U. S. C. § 51). The case against the B&O, however, was submitted to the jury which returned a verdict of $40,000 for the petitioner. The District Court denied a

motion for judgment n. o. v. and entered judgment as found by the jury. On appeal, the Third Circuit Court of Appeals, one judge dissenting, reversed, holding that the petitioner failed to establish negligence on the part of the B&O. 303 F. 2d 596. A rehearing *en banc* was denied. We granted certiorari. 371 U. S. 908.

The petitioner was employed by the B&O at its Mahoningtown station in New Castle, Pennsylvania. The railroad complex at Mahoningtown consisted of four sets of tracks, two owned and operated by the B&O and two by the P&LE. On the B&O side, the B&O maintained a station and station facilities. Although the P&LE maintained a station, it kept no employees, all necessary services for the two stations being provided by B&O employees. The B&O ticket agent issued tickets in the B&O station for the P&LE trains. The petitioner provided janitor work for both stations and assisted the loading and unloading of mail cars for the trains of both railroads. The petitioner was paid by the B&O and was under the sole supervision of the B&O ticket agent.

On the date of the accident, October 15, 1956, the petitioner handled the mail for the P&LE train scheduled to depart Mahoningtown at 12:25 a. m. The petitioner loaded 20 to 25 bags of mail on a B&O wagon at the B&O station. He crossed the B&O and P&LE tracks to the P&LE platform and, when the P&LE train pulled up, brought the wagon alongside the mail car door. On this occasion, in spite of the efforts of the petitioner and the P&LE baggageman, one Beck, the sliding door on the P&LE car would not open more than 18 or 20 inches. According to the petitioner, Beck commented that he had reported the defective door to the P&LE which had yet to fix it and that they would have to get the mail on and off as best they could. The petitioner, standing on the wagon, had no difficulty throwing the smaller bags in the restricted opening. The larger ones, however, weighing

from 80 to 100 pounds, required the petitioner "to twist around," and "to keep pushing and forcing them" to get them in the opening. In the process of this unusual exertion, the petitioner felt something snap in his back. He reported the injury immediately to the B&O ticket agent. Treatment of the injury eventually required the removal of a ruptured intervertebral disc and resulted in the petitioner's permanent disability. On the basis of this evidence, the jury found for the petitioner.

Before considering the merits of the decision below, the petitioner raises a procedural point, claiming that he was denied a rehearing *en banc* in the Third Circuit Court of Appeals in violation of his rights under 28 U. S. C. § 46 (c). At the time the petitioner filed his motion for rehearing *en banc* there were eight active judges serving on the Third Circuit. Four judges voted to grant the rehearing, two voted to deny, and two abstained. The rehearing was denied. The petitioner claims that to grant a rehearing *en banc,* the statute requires only a majority of those present. The Thi d Circuit requires an absolute majority of the active members of the court. Section 46 (c) provides:

> "Cases and controversies shall be heard and determined by a court or division of not more than three judges, unless a hearing or rehearing before the court in banc is ordered by a majority of the circuit judges of the circuit who are in active service. A court in banc shall consist of all active circuit judges of the circuit."

The Court had occasion to consider this section at length in *Western Pac. R. Corp.* v. *Western Pac. R. Co.,* 345 U. S. 247. It there said:

> "In our view, § 46 (c) is not addressed to litigants. It is addressed to the Court of Appeals. It is a grant of power. It vests in the court the power to order

hearings *en banc.* It goes no further. It neither forbids nor requires each active member of a Court of Appeals to entertain each petition for a hearing or rehearing *en banc.* The court is left free to devise its own administrative machinery to provide the means whereby a majority may order such a hearing." *Id.,* at 250.

The Court went on to say that the rights of the litigant go no further than the right to know the administrative machinery that will be followed and the right to suggest that the *en banc* procedure be set in motion in his case. The practice of the Third Circuit has been fully revealed by Judge Maris in Hearing and Rehearing Cases In Banc, 14 F. R. D. 91, which was referred to with approval by this Court in *United States* v. *American-Foreign S. S. Corp.,* 363 U. S. 685, 688, n. 5. Although every petition for rehearing is submitted to every member of the court, a judge is not required to enter a formal vote on the petition. Such a procedure is clearly within the scope of the court's discretion as we spoke of it in *Western Pacific.* For this Court to hold otherwise would involve it unnecessarily in the internal administration of the Courts of Appeals.

Turning to the merits, there can be no question that the petitioner is an employee of the B&O as required by § 1 of the F. E. L. A. Although the B&O suggests that the petitioner may have been the employee of the P&LE within the meaning of the common law loaned-servant doctrine, *Standard Oil Co.* v. *Anderson,* 212 U. S. 215; *Linstead* v. *Chesapeake & Ohio R. Co.,* 276 U. S. 28, 32–34, there is no evidence in the record to support such a conclusion. In describing the loaned-servant doctrine, the Court in *Anderson* stated that when the nominal employer furnishes a third party "with men to do the work and places them under his exclusive control in the performance of it, [then] those men become *pro hac vice*

the servants of him to whom they are furnished." 212 U. S., at 221. The Court concluded that under the common law loaned-servant doctrine immediate control and supervision is critical in determining for whom the servants are performing services. In the present case, the undisputed facts show that the petitioner was at all times paid by the B&O and under the sole supervision of B&O employees.[1] The intimations of the B&O that the petitioner might have been given directions by the P&LE baggageman is at most an example of the minimum cooperation necessary to carry out a coordinated undertaking, and, as noted in *Anderson*, cannot amount to control or supervision. 212 U. S., at 226. The whole tenor of the services the B&O provides for the P&LE speaks of an agreement by the B&O to manage and operate the P&LE station at Mahoningtown. On such evidence, the petitioner is clearly an employee of the B&O even under the common law loaned-servant doctrine, and we therefore need not consider the extent to which that doctrine

---

[1] The testimony of the B&O ticket agent on duty at the time of the petitioner's injury stands undisputed in the record:

"Q. [By the Court] Did the P&LE have any boss there that night?

"A. No, sir, the P&LE didn't have any employees whatsoever connected with that operation there.

"Q. Under whose supervision was Mr. Shenker?

"A. He was under the ticket agent, Mr. Boyd.

"Q. On that turn when he got hurt?

"A. On that turn he was under my supervision.

"Q. During the four months you say he worked there, did any P&LE employee give directions or orders to the plaintiff?

"A. No, sir.

"Q. From whom did he receive direction and orders, instructions?

"A. From me or Mr. Boyd would let me know what he wanted done and I would tell Mr. Shenker.

"Q. And you and Mr. Boyd were exclusively Baltimore & Ohio Railroad employees?

"A. Yes, sir."

applies to cases under the F. E. L. A. See *Linstead* v. *Chesapeake & Ohio R. Co., supra;* compare *Sinkler* v. *Missouri Pac. R. Co.,* 356 U. S. 326, 329–330.

The only remaining issue is the negligence, if any, of the respondent B&O. The trial judge instructed the jury that

". . . a railroad is under a duty to exercise ordinary prudence, caution and care to inspect and to furnish its employees with cars on which they work equipped with reasonably safe doors, even though the cars are owned by another railroad. A failure of the B&O Railroad to do so is negligence, providing that the railroad can foresee that one of its employees may be injured in performing his work in connection with that car and its equipment which are not reasonably safe."

No exception was taken to this charge. In his opinion denying the B&O's motion for judgment n. o. v., the trial judge relied on a series of court of appeals decisions standing for the more broad proposition that a railroad has the nondelegable duty to provide its employees with a safe place to work even when they are required to go onto the premises of a third party over which the railroad has no control. See *Kooker* v. *Pittsburgh & Lake Erie R. Co.,* 258 F. 2d 876; *Chicago Great Western R. Co.* v. *Casura,* 234 F. 2d 441; *Beattie* v. *Elgin, J. & E. R. Co.,* 217 F. 2d 863. These decisions are in accord with the opinions of this Court in *Bailey* v. *Central Vermont R. Co.,* 319 U. S. 350; *Ellis* v. *Union Pac. R. Co.,* 329 U. S. 649; *Harris* v. *Pennsylvania R. Co.,* 361 U. S. 15, reversing 168 Ohio St. 582, 156 N. E. 2d 822. The present case has been argued to us on the basis of these same decisions and the safe-place-to-work doctrine. The respondent admits the general statements of the doctrine in these cases. It bases its defense solely on the proposition that because the P&LE train had just pulled into the station, the B&O

8

did not have sufficient opportunity to obtain actual or constructive notice of the defective mail car door. The respondent relies on two lower court cases holding that where the defect in the premises of the third party arose within minutes or hours of the accident, there was insufficient time as a matter of law for the railroad to be held to have notice. *Kaminski* v. *Chicago R. & I. R. Co.,* 200 F. 2d 1; *Wetherbee* v. *Elgin, J. & E. R. Co.,* 191 F. 2d 302, subsequent appeal reported in 204 F. 2d 755, cert. denied, 346 U. S. 867.

Whatever the validity of these last two cases, they do not have relevance here. We hold that the B&O had a duty to inspect P&LE cars before permitting its employees to work with them. The standard of care applicable to the use of cars belonging to a foreign railroad was settled long before the accident in this case. In *Baltimore & Potomac R. Co.* v. *Mackey,* 157 U. S. 72, an employee of the Baltimore & Potomac was killed when a defective brake did not hold on a freight car hauled by the Baltimore & Potomac, but belonging to another railroad. Relying on the language of an earlier New York decision, *Gottlieb* v. *New York & Lake Erie R. Co.,* 100 N. Y. 462, 467, 3 N. E. 344, 345, the Court concluded that a railroad

> ". . . is bound to inspect foreign cars just as it would inspect its own cars. It owes the duty of inspection as master . . . . When cars come to it which have defects visible or discoverable by ordinary inspection, it must either remedy such defects or refuse to take such cars; so much at least is due from it to its employés." 157 U. S., at p. 90.

The Court did not have to look far for the "sound reason and public policy" behind this principle. Relying on the language of the lower court, the Court said:

> "It would be most unreasonable and cruel to declare, that, while the faithful workman may obtain com-

pensation from a company for defective arrangement of its own cars, he would be without redress against the same company if the damaged car that occasioned the injury happened to belong to another company." 157 U. S., at p. 89.

This decision was reaffirmed and extended a short time later in *Texas & Pac. R. Co.* v. *Archibald,* 170 U. S. 665. In that case, the Texas & Pacific accepted a car of the Cotton Belt Railway for loading at a cottonseed oil mill on a spur off the Texas & Pacific track. In the process of switching, an employee of the Texas & Pacific was seriously injured due to a defective coupling on the foreign car. The Texas & Pacific attempted to distinguish the *Baltimore & Potomac* case on the ground that the duty to inspect did not apply when a railroad accepted a foreign car only for loading rather than for hauling over its line in one of its trains. The Court dismissed the argument summarily:

"The argument wants foundation in reason and is unsupported by any authority. In reason, because, as the duty of the company to use reasonable diligence to furnish safe appliances is ever present, and applies to its entire business, it is beyond reason to attempt by a purely arbitrary distinction to take a particular part of the business of the company out of the operation of the general rule, and thereby to exempt it, as to the business so separated, from any obligation to observe reasonable precautions to furnish appliances which are in good condition." 170 U. S., at p. 670.[2]

---

[2] The Court in *Texas & Pacific* went on to hold that the railroad will not be held to its duty to inspect where the employee himself becomes aware of the defect yet continues to work with the car with knowledge of its defect. This exception to the rule was based on the belief that the employee assumes the risk of handling appli-

See generally, Annotation, 41 L. R. A. 101. The rules adopted in these two cases are unavoidably applicable to the present case. The B&O required the petitioner to work with cars belonging to the P&LE, taking no precautions whatsoever to protect him from possible defects in these cars, defects for which it would be liable should they appear in its own cars. As *Texas & Pacific* makes abundantly clear, there is no *de minimis* rule called into play on account of the brevity of the sojourn of the P&LE train in Mahoningtown station, since the length of the sojourn is irrelevant to the duty owed to the employee working with the car. Nor is it an answer to claim that the B&O lacked control or supervision over the P&LE car. Such arguments have never supported an exception to the employer's duty to provide a safe place to work, *Chicago Great Western R. Co.* v. *Casura, supra,* p. 447; *Beattie* v. *Elgin, J. & E. R. Co., supra,* p. 865; *Terminal R. Assn. of St. Louis* v. *Fitzjohn,* 165 F. 2d 473, 476–477, and have no greater relevance here with respect to the duty to provide reasonably safe cars, see Annotation, 41 L. R. A. 101. The B&O may adequately protect itself by refusing to permit its employees to service the car. Since the instructions to the jury adequately reflect the holdings in these cases and since the B&O's failure to inspect is uncontested, the jury verdict should have been affirmed.

Although recovery in this case is supported by the common law, it is also required by any reasonable construction of the Federal Employers' Liability Act itself. As we stated in *Sinkler* v. *Missouri Pac. R. Co.,* 356 U. S.

---

ances which are known to be defective. · 170 U. S., at pp. 672–673. This exception, of course, is no longer relevant under the F. E. L. A., since § 4 of the Act expressly eliminates assumption of risk as a defense to negligence on the part of the employer. In its place, the railroad may raise contributory negligence on the part of the employee in mitigation of damages, a defense that was raised in this case and on which the jury was properly charged.

326, 330: "it was the conception of this legislation that the railroad was a unitary enterprise, its economic resources obligated to bear the burden of all injuries befalling those engaged in the enterprise arising out of the fault of any other member engaged in the common endeavor." If recovery were denied in this case, the railroads, by the simple expedient of doing each other's work, could tie their employees up in legal technicalities over the proper railroad to sue for injuries and perhaps remove from coverage of the Act a significant area of railroad activity. It would subject the employee once more to the stricter negligence standards of the common law and such debilitating doctrines as assumption of risk. Cf. *Texas & Pac. R. Co.* v. *Archibald,* 170 U. S. 665, 673.

In our opinion the case was submitted to the jury under proper instructions, and there was a reasonable basis in the evidence for the verdict which the jury returned.

*Reversed.*

MR. JUSTICE GOLDBERG, with whom MR. JUSTICE HARLAN and MR. JUSTICE STEWART join, dissenting.

With all deference, I must respectfully dissent. We are not here dealing with a situation in which a lower court has so disregarded applicable law as to require correction here. This is simply a case in which the evidence is insufficient to sustain liability of the respondent B&O and in which a perhaps more substantial claim against the P&LE was abandoned by the petitioner below. Any hiatus in protection of the petitioner exists not because of inadequacies in the law, but solely because of inadequacies in the evidence.

Normally, in a case such as this in which the defendant's own negligence did not create the hazardous condition, actual or constructive notice to the defendant of the injury-producing defect is a prerequisite to negli-

gence· and, therefore, to liability. See, *e. g., Sano* v. *Pennsylvania R. Co.,* 282 F. 2d 936, 938; *Dobson* v. *Grand Trunk W. R. Co.,* 248 F. 2d 545, 548; *Atlantic C. L. R. Co.* v. *Collins,* 235 F. 2d 805, 808, cert. denied 352 U. S. 942; *Kaminski* v. *Chicago R. & I. R. Co.,* 200 F. 2d 1, 4. See also *Ringhiser* v. *Chesapeake & O. R. Co.,* 354 U. S. 901; *Wetherbee* v. *Elgin, J. & E. R. Co.,* 191 F. 2d 302, subsequent appeal reported in 204 F. 2d 755, cert. denied, 346 U. S. 867. Thus, given the failure of the petitioner to introduce evidence tending to show that the respondent B&O knew, or in the exercise of reasonable care should have known, of the defective door, the judgment entered below in favor of the B&O should be sustained.[1]

The Court seeks to avoid the application of these ordinarily controlling principles by invoking several cases, decided prior to enactment of the F. E. L. A., which, it holds, require that, in order to discharge its duty "to use reasonable care in furnishing [the petitioner] . . . with a safe place to . . . work," *Bailey* v. *Central Vermont R. Co.,* 319 U. S. 350, 352,[2] the B&O must inspect the P&LE cars before B&O employees are allowed or directed to work on them. Even accepting, *arguendo,* the general applicability here of the principle imposing on the B&O the duty to inspect the cars which it services for the P&LE, the result reached by the Court does not follow. Such a duty may exist, to be sure, but the ob-

---

[1] The petitioner does not here argue that notice of the defect to the P&LE was also sufficient notice to respondent B&O.

[2] Although language in its opinion suggests the contrary, see pp. 7, 10, *ante,* I do not understand the Court today to be directly declaring an absolute duty to provide a safe place to work without regard to negligence, since the very cases cited by the Court indicate that the duty is to exercise reasonable care with respect thereto. Instead, the Court ignores the statutory concept of negligence in setting out the duty of inspection it imposes, a result which, for the reasons stated *infra,* is erroneous and violates the clear language of the governing statute.

ligation can be no more than to conduct reasonable, nonnegligent inspections, and the liability which would accrue from breach of such a duty would be responsibility for damages occurring *as a result* of the negligent performance or the nonperformance of that duty. In a meaningful sense, then, imposition of a duty to inspect is no more than a specific application of the concept of constructive knowledge, since it is implicit in the principle that one is chargeable with knowledge of that which in the exercise of reasonable care he should have known. Here, that would mean that in the exercise of reasonable care the B&O should have inspected the P&LE cars and is chargeable with knowledge of that which a reasonable inspection would have shown.

The Court, however, says merely that the B&O had a duty to inspect and that, having failed to inspect, it is liable to the petitioner for the defect which apparently caused his injury. I find this reasoning unconvincing.

While the Court declares that it is undisputed that the B&O did not inspect, there is simply no evidence in the record with regard to inspection. Moreover, even if an inference of failure to inspect were supportable, there is no basis for assuming, as the Court does and must do to sustain its result, that a reasonable, nonnegligent inspection procedure would, in fact, have disclosed the defect which is the basis of the petitioner's claim. Even when there does exist a duty of inspection, the mere existence of a defect does not itself create liability; it must also be shown that reasonable, nonnegligent inspection procedures would have disclosed the defect.[3]

---

[3] This, in fact, is the apparent rule of the very cases relied upon by the Court to subject the B&O to liability here. In *Baltimore & Potomac R. Co.* v. *Mackey,* 157 U. S. 72, cited by the majority at p. 8, *ante,* the Court based liability on the operative "principle that a railroad company is under a legal duty not to expose its employés to dangers arising from such defects in foreign cars *as may be dis-*

14

Evidence of this liability-producing factor was not introduced by the petitioner. The record is devoid of evidence as to the length of time the defect existed prior to the petitioner's injury,[4] and as to whether, even under an extremely careful and nonnegligent inspection procedure, the defect would have been discovered prior to the time of petitioner's injury.

Under the rationale and result of this case, a railroad would be liable for a defect which first appeared immediately prior to the injury for which recovery is sought and which even the most scrupulous kind of inspection procedure could neither have avoided nor detected. What the Court appears to have done is to create not simply a duty of inspection, but an absolute duty of discovery of all defects; in short, it has made the B&O the insurer of the condition of all premises and equipment, whether its own or others, upon which its employees may work. This is the wholly salutary principle of compensation for industrial injury incorporated by workmen's

---

*covered by reasonable inspection before such cars are admitted into its train."* 157 U. S., at 91 (emphasis supplied). The second case upon which the majority bases its result here, see pp. 8–9, *ante,* simply applies this same principle to a somewhat different set of facts, again declaring liability for injury-producing defects *"discoverable by proper inspection." Texas & Pac. R. Co.* v. *Archibald,* 170 U. S. 665, 672 (emphasis supplied). The nature and timing of the required inspection—but probably not, as the Court here declares, the duty of inspection itself—presumably depend, as a function of its reasonableness, on a number of factors, including the duration of the time the car is available to the defendant for inspection and the manner in which it is received. In both of the cited cases, the "foreign" car was in the possession and on the tracks of the named defendant upon which liability was imposed.

[4] The statement attributed to the P&LE baggageman by the petitioner that the defective door had been reported to the P&LE does not, of course, shed any light on the length of time the defect had continued to exist. The report may well have been made only shortly before the petitioner was injured.

compensation statutes, but it is not the one created by the F. E. L. A., which premises liability upon negligence of the employing railroad. It is my view that, as a matter of policy, employees such as the petitioner, who are injured in the course of their employment, should be entitled to prompt and adequate compensation regardless of the employer's negligence and free from traditional common-law rules limiting recovery. But Congress has elected a different test of liability which, until changed, courts are obligated to apply.