ALMON, Justice.
This is an appeal from a judgment on a jury verdict awarding the plaintiff $1,554,-000 in an action under the Federal Employers’ Liability Act, 45 U.S.C. § 51 et seq. (“FELA”). Richard Coffee, an employee of Seaboard System Railroad, was injured as he stepped off Seaboard’s train onto prop *36 erty owned and operated by the Jesse Mor-ie Sand Company (“Morie Sand”). The questions presented here are whether the trial court properly instructed the jury that any negligence by Morie Sand that proximately caused Coffee’s injury would be imputed to Seaboard and whether the damages awarded were excessive.
This case has been appealed once before, and in that first appeal the new trial order by the trial court was affirmed because Coffee’s attorney had made a reference in the first trial to an indemnity agreement between Seaboard and Morie Sand. Coffee v. Seaboard System R.R., 507 So.2d 476 (Ala.1987).[1]
The evidence showed that Coffee’s injury occurred on Morie Sand’s property near Brown Sands, Georgia. Morie Sand’s property is in an area of fine sand that was described as extending in a five-mile radius around Morie Sand’s property. Coffee’s injury occurred when he stepped from the train into the sand adjoining Morie Sand’s sidetrack. His foot struck a broken piece of a lever called an “inch bar,” causing his knee to fracture and to tear tendons. The evidence indicated that Morie Sand’s employees used inch bars to move railroad cars short distances on the track while loading sand into them, but that Seaboard’s employees were not issued and did not use inch bars. Thus, the evidence would support a finding that a Morie Sand employee negligently left the broken piece of inch bar beside the track and that it became buried in sand and proximately caused Coffee’s injury.
The trial court instructed the jury:
“The defendant [Seaboard] was not a guarantor or insurer of the safety of the place to work. The extent of the defendant’s duty was to exercise reasonable care under the circumstances at the time and place in question to provide the plaintiff a reasonably safe place to work.
“Now the railroad does have a non-del-egable duty to provide its employees with a safe place to work despite the fact that it may not own, control, or be under a primary obligation to maintain premises on which the employee is injured. The railroad is not relieved from liability because such premises are unsafe or because [of] the existence of an unsafe condition brought about through the act of another and without the fault of the railroad. In other words, what I’m saying, if you found that the plaintiff in this case was injured as a result of the negligence on the part of the industry in question, the Jesse Morie Sand Company, or some of its employees, then that negligence would be imputed to the railroad defendant here.
[[Image here]]
“Now I’ve already explained to you the relationship between any negligence on the part of Jesse Morie’s employees and the railroad by saying that the negligence on the part of those employees, if you found that they were negligent, would be imputed to the defendant.”
Seaboard objected to these instructions, noting that an extensive charge conference had been held, and reiterating its objections “on the basis that the negligence is not, as a matter of law, imputed to the railroad.” Seaboard argued:
“The duty of the railroad is to provide a safe place to work. However, it is not responsible for the negligence of others. It simply ... may be evidence that bears on its own negligence. But the negligence of it is not imputed, certainly not imputed to them unless that person, or by some reason the agents of the railroad that is fulfilling an operational activity of the railroad such as switching cars and words to that effect [sic].”
The gist of Seaboard’s argument is that it cannot be held liable under the FELA unless its officers, agents, or employees negligently failed to provide a safe place for Coffee to work, and that neither Morie Sand nor any of its employees was Seaboard’s agent under the facts and the applicable law. It states the issue: “Whether the trial court incorrectly charged the jury that the negligence of an independent side *37 track operator is to be imputed to the railroad without qualification.”
Coffee counters principally by reliance on Sinkler v. Missouri Pac. R.R., 356 U.S. 326, 78 S.Ct. 758, 2 L.Ed.2d 799 (1958). Sinkler was injured while working on a Missouri Pacific train through the negligence of a switching crew working for the Houston Belt & Terminal Railway Company (the “Belt Railway”). The Court held that “an accommodating scope must be given to the word ‘agents’ ” as used in the FELA, 356 U.S. at 330-31, 78 S.Ct. at 762, and that the Belt Railway, in switching cars on Missouri Pacific’s train, was performing “operational activities” of Missouri Pacific and thus was acting as an agent of Missouri Pacific. Stating its holding generally, the Court wrote: “when a railroad employee’s injury is caused in whole or in part by the fault of others performing, under contract, operational activities of his employer, such others are ‘agents’ of the employer within the meaning of § 1 of FELA.” 356 U.S. at 331-32, 78 S.Ct. at 763.
Coffee points to the contract between Seaboard and Morie Sand, in which Morie Sand agreed to maintain the sidetrack to the satisfaction of Seaboard’s chief engineer and to give Seaboard exclusive use of the sidetrack. In the contract, Morie Sand agreed “to keep the right-of-way of said sidetrack free and clear of all commodities, rubbish, trash, or other objects which may be hazardous or dangerous to those engaged in the operation of the Railroad.” Coffee argues that “ ‘Right-of-way’ obviously refers to the track and adjacent walkways of those engaged in the operation of the railroad,” that the maintenance duties to which Morie Sand agreed are operational activities of Seaboard, and, thus, that in performing those activities, Morie Sand was acting .as an agent of Seaboard.
Coffee’s contention has been answered by the United States Supreme Court, however, in Ward v. Atlantic Coast Line R.R., 362 U.S. 396, 80 S.Ct. 789, 4 L.Ed.2d 820 (1960). Ward, an employee of Atlantic Coast Line, was injured while working on his day off on a sidetrack owned by the M. & M. Turpentine Company.
“That company had an agreement with the railroad calling for the railroad to make periodic inspections of the track and for the repairs disclosed to be necessary by such inspections to be made by and at the expense of the Turpentine Company ‘to the satisfaction of the [railroad’s] Chief Engineer.’ When an inspection revealed the need for the work in question, the Turpentine Company engaged the petitioner’s foreman to recruit his crew to do the work on their day off under his direction. The foreman offered the crew railroad overtime rates of pay for doing the work, but there is a sharp conflict in the evidence whether he told the crew that they would not be working for the railroad but for someone else. The foreman paid the wages with funds supplied to him by the Turpentine Company.
“The petitioner contends that the proofs require a holding as a matter of law that the Turpentine Company, in the maintenance of the siding, was the ‘agent’ of the respondent railroad within the meaning of § 1 of the [FELA], as we construed that term in [Sinkler], We find no merit in this contention. Indeed, we do not think that the proofs presented a jury question whether the Turpentine Company was the railroad’s ‘agent’ within the meaning of the Act. This was not a situation, as in Sinkler, in which the railroad engaged an independent contractor to perform operational activities required to carry out the franchise. This was a siding privately owned by the Turpentine Company and established to service it alone. In maintaining it, we do not see how it can be said under the proofs that the Turpentine Company was ‘engaged in furthering the operational activities of respondent.’ [Sinkler, at 331, 78 S.Ct. at 762-63].”
362 U.S. at 397-98, 80 S.Ct. at 790-91.[2]
The above-quoted portion of Ward is on all fours with this case. In maintaining its *38 own sidetrack, Morie Sand was no more an agent of Seaboard than the Turpentine Company was an agent of Atlantic Coast Line in maintaining its own sidetrack. Coffee cites a number of Federal circuit and district court cases as following Sinkler and as supporting the challenged instructions in this case.[3] Suffice it to say that none of those cases could supersede the dispositive holding in Ward and, in any event, they are for the most part distinguishable. The only United States Supreme Court case subsequent to Ward that the parties cite as being instructive on the issue before us is Shenker v. Baltimore & Ohio R.R., 374 U.S. 1, 83 S.Ct. 1667, 10 L.Ed.2d 709 (1963), and that case does not overrule the pertinent holding in Ward or apply nearly so directly to this case as Ward does. Our research has not disclosed any United States Supreme Court case overruling Ward or limiting the extent to which it disposes of the issue before us.
Under the holding in Ward, supra, the trial court erred in giving the instructions made the subject of this appeal. Therefore, the judgment is reversed and the cause is remanded. It is thus unnecessary to consider the second issue presented, regarding whether the damages awarded were excessive.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, ADAMS and STEAGALL, JJ., concur.

. Although the previous opinion spelled the sand company's name as "Jessie Morrie,” the record before us indicates that the correct spelling is "Jesse Morie.”

. The Court proceeded to reverse the judgment for Atlantic Coast Line on Ward's alternative argument that the trial court erred in refusing Ward’s requested jury instructions that would *38 have allowed the jury to find, from all of the circumstances, that Ward was injured during the course of his employment with Atlantic Coast Line and through Atlantic Coast Line’s negligence, apparently on the theory that the jury could have found, under proper instructions, that Ward's foreman had effectively hired the crew to work overtime for Atlantic Coast Line. That aspect of Ward does not support the trial court’s instructions in this case or undermine the extent to which the quoted portion of Ward is dispositive of this case, because there is no evidence that Seaboard employees performed maintenance for Morie Sand.

. E.g., Payne v. Baltimore & Ohio R.R., 309 F.2d 546 (6th Cir. 1962), cert. denied, 374 U.S. 827, 83 S.Ct. 1865, 10 L.Ed.2d 1051 (1963); Carter v. Union R.R., 438 F.2d 208 (3d Cir.1971); Nivens v. St. Louis Southwestern R.R., 425 F.2d 114 (5th Cir.), cert. denied 400 U.S. 879, 91 S.Ct. 121, 27 L.Ed.2d 116 (1970); and Carney v. Pittsburgh & Lake Erie R.R., 316 F.2d 277 (3d Cir.), cert. denied, 375 U.S. 814, 84 S.Ct. 45, 11 L.Ed.2d 49 (1963). Cf. Pyzynski v. Pennsylvania Central Trans. Co., 438 F.Supp. 1044 (W.D.N.Y.1977), cited by Seaboard as supporting its position and as disapproving of Payne, the case most strongly tending to support Coffee’s argument.