610 So.2d 903 (1992)
Dommie R. POLOTZOLA,
v.
MISSOURI PACIFIC RAILROAD CO. d/b/a Union Pacific Railroad Co.
No. 91 CA 1707.
Court of Appeal of Louisiana, First Circuit.
November 20, 1992.
*904 Joe M. Inabnett, New Orleans, and Zach Butterworth, St. Francisville, for plaintiff-appellant Dommie R. Polotzola.
Boris Navratil, Baton Rouge, for defendant-appellee Missouri Pacific R. Co. d/b/a Union Pacific R.R.
Before CARTER, LeBLANC and FOIL, JJ.
LeBLANC, Judge.
Dommie Ray Polotzola filed suit under the Federal Employers' Liability Act (F.E.L.A., 45 U.S.C. § 51 et seq.) against the Missouri Pacific and Union Pacific Railroads, seeking damages for injuries sustained during a work-related accident. The jury returned a verdict in favor of defendants and judgment was entered dismissing the suit. Polotzola now appeals, urging that the verdict was contrary to the great weight of the evidence and that the trial court erred in admitting evidence prejudicial to his case. We affirm.

DISCUSSION
Polotzola was employed by Missouri Pacific Railroad as a bridge tender in December 1975. It was his responsibility to monitor river traffic on the Atchafalaya and to coordinate the opening of the Melville Bridge with oncoming train traffic. The bridge was constructed of steel girders with wooden timbers forming the bridge decking. A shack housing the bridge controls was located approximately midway across the bridge.
The accident in question occurred on October 23, 1986. Polotzola claims that as he approached the bridge tender's shack, he tripped on uneven boards and injured his right shoulder as he reached out to break his fall. The shoulder did not respond to conservative treatment, leading Polotzola's physicians to suspect a problem in the shoulder rotator cuff.
Polotzola underwent an arthrogram, a procedure in which radiopaque iodine is injected into the shoulder area to permit more comprehensive viewing of the rotator *905 cuff. Shortly after this test, Polotzola complained of cold chills, dizziness and headaches; several days thereafter his face became red and puffy. Angie Polotzola, plaintiff's wife, testified that her husband began showing signs of disorientation and memory loss during this time. Some six days after the arthrogram, Polotzola sought medical help at the emergency room and was hospitalized for several days because his blood pressure was excessively high. Mrs. Polotzola testified that the railroad's claims agent first suggested to her that her husband's symptoms might indicate an allergic reaction to the iodine used in the arthrogram; Mrs. Polotzola stated that Dr. Lazaro, the physician who ordered the test, confirmed this suspicion.
One physician, Dr. Domingue, prescribed the drug Xanac to combat Polotzola's dizziness and the ringing in his ears. Polotzola subsequently became addicted to this drug. In 1988, Polotzola came under the care of Dr. Louis Cenac, a Baton Rouge psychiatrist. Under Dr. Cenac's care, Polotzola was admitted to CPC Meadow Wood Hospital for treatment of his Xanac addiction. During his stay at CPC Meadow Wood, both Polotzola's wife and his mother voluntarily attended group therapy sessions conducted by a board certified social worker, Gary Smith, who was assigned to Polotzola's professional team by Dr. Cenac.
Despite two shoulder surgeries in 1987, Polotzola claimed he was still unable to lift anything with his right arm by the time of trial, although he could write with that hand. In addition, he still complained of dizziness, headaches, and ringing in the ears. His wife testified that he was still very disoriented and suffered short term memory loss, although his mental condition seemed to have "improved slightly" during the time he had not been taking Xanac.
Polotzola filed suit in June 1988 under the Federal Employer's Liability Act. He alleged that defendants were negligent in failing to provide him with a reasonably safe place in which to work, specifically asserting defendants' negligence in maintaining and inspecting the wooden walkway where he fell. He further claimed that because of improper treatment for his original injuries, he suffered diminished earning capacity and will continue to suffer mental and physical anguish. He sought $750,000.00 in damages plus interest and costs. After trial held May 1991, the jury found that Polotzola had indeed sustained personal injuries while on the job on the day of the accident, but that Missouri Pacific Railroad d/b/a Union Pacific Railroad was not negligent in failing to provide him with a safe place to work. The trial court entered judgment in favor of defendants and dismissed Polotzola's suit.
On appeal, Polotzola presents four assignments of error challenging several of the trial court's evidentiary rulings. He further argues that the jury's verdict was contrary to the great weight of the evidence and F.E.L.A.'s "safe place to work" standard.
ADMISSION OF MEDICAL RECORDS (Assignments two and four):
Polotzola first argues that the court erred in admitting his medical records from CPC Meadow Wood, specifically the social worker's report which contains references to alcoholism, wife beating, and his arrest and guilty plea on a marijuana charge.
On direct examination, Mrs. Polotzola testified that her husband drank before the accident, but that she did not believe he had a drinking problem or consider him to be an alcoholic. When asked if Polotzola ever got into "difficulties" with others because of his drinking, she stated that he might have gotten into an argument, but it wouldn't have been because of his drinking.
During cross-examination, Mrs. Polotzola stated that both she and her husband drank; she wasn't sure if he was drinking too much, but indicated there was no problem "as long as he didn't beat me and beat my kids[.]" She further testified that she had occasionally left her husband for short periods of time prior to his accident; these brief separations were not, however, in response to her husband's excessive drinking. At this point, defense counsel sought to introduce Polotzola's medical records from CPC Meadow Wood, specifically the report *906 of the social worker with whom Mrs. Polotzola had attended a group session. After argument held outside the jury's presence, the trial court overruled plaintiff's objection to introduction of the records.
Defense counsel then resumed cross-examination of Mrs. Polotzola in front of the jury. Mrs. Polotzola admitted telling the social worker that her husband's drinking had gradually increased over the years following their marriage but prior to his accident, and that the hours of his job as a bridge tender were ideal for an alcoholic. She further admitted that Polotzola sometimes went straight from work to a local bar and that they had "frequent alcohol related fights." She also told the social worker that alcohol made her husband mean and "very picky" and that he was very defensive about his alcohol use.
Mrs. Polotzola admitted that most of their marital separations were alcohol related. Although she had testified on direct examination that her disagreements with her husbands never reached the point at which she contemplated divorce, she admitted she had filed for separation in 1978, alleging cruel treatment. She stated that the allegation of cruel treatment was made on her lawyer's recommendation, but admitted that her husband had fired a pistol in the direction of her and their small child. When asked if her husband ever hit her, she admitted that he "has pushed me, but he has never beat me to where I had to have stitches or go to the emergency room." Defense counsel then introduced a copy of a criminal complaint, signed by Mrs. Polotzola in June 1988, in which she claimed to have been battered by her husband; she explained that he had not hit her on that occasion, but had instead thrown something at her.
On appeal, Polotzola first argues that the trial court erred in failing to "consider the threshold relevance" of the information contained in the social worker's report, as required by La.C.E. art. 401 which provides in pertinent part:
"[E]vidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
He further urges that, even if relevant, the contested evidence should have been excluded because its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury [.]" La.C.E. art. 403.
Polotzola claims in this suit that his mental and emotional difficulties, which include memory loss, confusion, dizziness, shortened attention span and mood swings, are solely the result of a reaction to the radiopaque iodine used during the arthrogram. He thus placed at issue his mental and emotional state both before and after the accident.
Contrary to Polotzola's contention that the social worker's notes were not used by "any health care practitioner," Dr. Cenac testified that he used this report to help him diagnose and treat his patient. Moreover, the testimony of three physicians established that alcohol use could cause or aggravate the types of psychological problems of which Polotzola complained.
We find that the medical record, including the social worker's report, was clearly relevant to establish the nature and extent of Polotzola's mental difficulties and the extent to which these were the result of his accident and treatment. Moreover, in addition to its relevance as impeachment evidence against Mrs. Polotzola, use of the social worker's report prompted her admissions concerning her husband's pre-accident alcohol use and occasionally violent outbursts, information of substantial probative value in rebutting plaintiff's claim that his troubles began after the accident.
While cross-examining Mrs. Polotzola, defense counsel asked if her meeting with the social worker was "some kind of group therapy for battered wives or what?" Mrs. Polotzola responded in the negative, explaining that the session was attended by family members of patients confined at the hospital. We cannot say that defense counsel's question unfairly prejudiced Polotzola's case, particularly in light of Mrs. Polotzola's testimony concerning her husband's temperament and Dr. *907 Cenac's unequivocal testimony that Polotzola had hit his wife. We further observe that plaintiff's counsel made no contemporaneous objection to this question. See La.C.E. art. 103(A)(1).
The exclusion or admission of evidence on the grounds of relevancy is within the discretion of the trial court and its ruling will not be reversed absent a clear abuse of discretion. Citizen's Bank & Trust v. Consolidated Terminal Warehouse, 460 So.2d 663 (La.App. 1st Cir.1984). While the evidence at issue may have been prejudicial, we do not believe it was unfairly so when taken in the context of the record as a whole. We find no abuse of the court's discretion; assignments two and four are without merit.
SOCIAL WORKER PRIVILEGE (Assignment one):
Polotzola urges that admission of the social worker's notes violated La.R.S. 37:2714 A, which provides that the communications of a client to a board certified social worker are privileged. However, in overruling plaintiff's objections on this ground at trial, the court concluded that Polotzola, rather than his wife, was the patient or client to whom this privilege applied. The record supports this conclusion. Mrs. Polotzola testified that she attended group therapy at CPC Meadow Wood because she wanted to help her husband get well.
Dr. Cenac testified that he assembled a team of professionals, including social worker Gary Smith, to assist in treating Polotzola at the hospital. Because Smith was part of the health care team assigned to Polotzola's case, communications made to him would ordinarily be privileged under La.R.S. 13:3734. In defining "health care provider," this statute lists professionals in the fields of both mental and physical health and includes employees and agents of institutions providing health care. However, the statute further provides that:
C (3) If any person brings an action to recover damages, in tort or for worker's compensation under federal or state laws, for personal injuries, such action shall be deemed to constitute a consent by the person bringing such action that any health care provider who has attended such person at any time may disclose any communication which was necessary to enable him to diagnose, treat, prescribe, or act for said patient.
Given Dr. Cenac's testimony that he used Smith's notes in treating Polotzola, the communications made to Smith during group therapy are clearly covered by this paragraph. Polotzola waived his privilege by bringing this action to recover damages for personal injuries. This assignment lacks merit.
OTHER EVIDENTIARY RULINGS (Assignment four):
Polotzola contends that the trial court erred in permitting the "continued revelation of specific details of inadmissible criminal actions." He first complains that defense counsel asked Mrs. Polotzola about her husband's "alcohol related arrests." However, we observe that plaintiff's counsel asked Mrs. Polotzola on direct examination if her husband had even been arrested for drinking. The court nevertheless sustained plaintiff's objections and defense counsel proceeded to another line of questioning. No prejudicial error exists here.
Polotzola next contends that his case was prejudiced by defense counsel's use of the criminal affidavit sworn out by Mrs. Polotzola against her husband. Plaintiff's counsel objected only to "the admission of the document itself." Defense counsel explained that the affidavit was submitted to impeach Mrs. Polotzola's testimony. No specific objection by plaintiff appears on this record, and counsel did not request a limiting instruction regarding Mrs. Polotzola's testimony on this subject. The court ruled that as Mrs. Polotzola had admitted she filed the complaint against her husband, plaintiff's objection to admission of the document was sustained. Again, Polotzola's complaint is unfounded.
Polotzola further urges that the court erred in allowing defense counsel to question him about a fight in which he had engaged shortly before the trial. La.C.E. *908 art. 103(A)(1) provides that a trial court ruling may not be challenged on appeal unless a timely objection appears on the record stating the specific ground of objection. See Bates v. Denney, 563 So.2d 298 (La.App. 1st Cir.), writ denied, 566 So.2d 961 (La.1990). Plaintiff's counsel made no contemporaneous objection to this line of questioning, nor does a general or continuing objection appear earlier in the record.
As we find no error in the trial court's rulings, this assignment is without merit.
JURY VERDICT:
Finally, Polotzola argues that the jury's verdict was contrary to the great weight of the evidence and to F.E.L.A.'s "safe place to work" standard. 45 U.S.C. 51 et seq.
Under F.E.L.A., a railroad has a duty to exercise reasonable care in providing a reasonably safe place to work. See Shenker v. Baltimore & Ohio Railroad, 374 U.S. 1, 83 S.Ct. 1667, 10 L.Ed.2d 709 (1963). Polotzola contends that there was "no question" that loose and uneven boards presented a trip hazard to employees assigned to the Melville bridge. However, one of Polotzola's co-workers, E.J. Dupont, testified that he had never seen anyone trip on the bridge walkway. Nor did he see any tripping hazards when he arrived for the afternoon shift the day of the accident. Bennett Morain, who relieved Polotzola after the accident, saw no problems with the walkway outside the bridge tender's shack nor did he know of anyone other than Polotzola who had fallen on it. Keith Taylor, who worked the shift before Polotzola's, did not see any curled up boards in front of the shack when he returned to work two days after Polotzola's accident. Moreover, testimony of Polotzola's co-workers also tends to support the conclusion that the railroad responded appropriately to maintenance requests.
The jury also heard Polotzola's own testimony. He admitted signing accident reports which his wife filled out for him according to his instructions; these reports denied any defects in the work place and stated that the accident could not have been prevented. On one report, he had instructed his wife to write: "No defects. Just slipped and fell."
Appellate review of a claim brought under F.E.L.A. is governed by Federal Rule of Civil Procedure 52(a), which provides that a trial court's findings shall not be set aside on review unless they are clearly erroneous. See also Cooper v. Keyes Offshore, Inc., 421 So.2d 385 (La. App. 1st Cir.1982) (in the context of a Jones Act claim). An appellate court may not reverse a jury's findings of fact in a F.E.L.A. case unless there is a complete absence of any probative facts to support the jury's conclusions; as long as some evidence in the record supports its verdict, the jury is free to disregard or disbelieve all other evidence inconsistent with it. Dennis v. Denver & Rio Grande Western Railroad Co., 375 U.S. 208, 84 S.Ct. 291, 11 L.Ed.2d 256 (1963).
The record supports the jury's conclusion that the defendant railroads did not violate the duty to provide a reasonably safe place to work. We will not disturb the verdict.

CONCLUSION
For the reasons expressed, the trial court's judgment is affirmed. Costs of this appeal are assessed against plaintiff, Dommie Polotzola.
AFFIRMED.
CARTER, J., concurs.