**Stuart W. WALLENBERG and Julie Wallenberg, his wife, Plaintiffs,**

v.

**BURLINGTON NORTHERN RAILROAD COMPANY, a corporation and the Belt Railway Company of Chicago, a corporation, Defendants.**

No. 95 CV 0356.

United States District Court, N.D. Illinois, Eastern Division.

July 30, 1997.

Laurence Calnan Acker, Robert Bruce Thompson, Harrington, Thompson, Acker &

Harrington, Ltd., Chicago, IL, for Stuart W. Wallenberg, Julie Wallenberg.

John F. Newell, Kenneth John Wysoglad, Robert John Prendergast, Michael J. Sazdanoff, Kenneth J. Wysoglad & Associates, Chicago, IL, for Burlington Northern R.R. Co.

Bernard Roccanova, Ginger G. Mayer, Ross & Hardies, P.C., Chicago, IL, for Belt Ry. Co. of Chicago.

## MEMORANDUM AND ORDER

MANNING, District Judge.

This matter comes before the court on the motions of defendant the BELT Railway Company of Chicago for summary judgment on Count I of plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 56 and of defendant Burlington Northern Railroad Company for summary judgment on Count I of plaintiffs' amended complaint, also pursuant to Federal Rule of Civil Procedure 56. Defendant Burlington Northern has also filed a motion to strike plaintiffs' 12N statement. For the following reasons, each defendant's motion will be denied. As each party has filed a separate motion, the memorandum will address each motion separately.[1]

## BACKGROUND

Plaintiffs Stuart and Julie Wallenberg bring this cause of action in three counts. Count I is brought by plaintiff Stuart Wallenberg pursuant to the Federal Employers Liability Act, 45 U.S.Code, Section 51—60, and is directed to BNRR and BELT. Count II is a supplemental common law negligence action brought by Stuart Wallenberg against BELT. Count II is a derivative claim brought by Julie Wallenberg for loss of consortium. Neither Count II or III is the subject of the instant motion.

Under the FELA, a covered railroad is liable for negligently causing the injury or death of any person while he or she is 'em-

1. BELT filed its motion for summary judgment on October 22, 1996. Burlington Northern filed its motion for summary judgment on November 1, 1996. Burlington Northern incorporates by direct reference the statement of material facts with record references pursuant to the Local Rules of the United States District Court for the Northern District of Illinois submitted by defendant BELT in support of its motion for summary judgment, along with affidavits in support of the statement of material facts, the memorandum of law submitted by BELT and the arguments contained in the Motion and Memorandum of Law.

ployed' by the railroad. *Kelley v. Southern Pacific Company*, 419 U.S. 318, 95 S.Ct. 472, 42 L.Ed.2d 498 (1974). Count I of the complaint asserts that plaintiff was employed by defendant BNRR as an engineer. On or about February 28, 1994, he was assigned to BNRR job 359T which required him to deliver a train from Cicero to the BELT at Bedford Park and to return a train back to Cicero. As plaintiff and his assigned crew were making preparations to return a train back to Cicero, the BELT dispatcher allegedly told them they were running out of time[2] and directed them to get a cab back to Cicero. Enroute to the cab, plaintiff was injured as he walked across an area that he alleges had an "inordinate accumulation of ice of long duration covered with an unnatural accumulation of snow concealing the ice". Plaintiff fell and injured himself in this area.

The BELT is owned exclusively by a group of nine railroad companies. The various railroads, of which BNRR is a member, need to interchange railcars with each other. Rather than each of these railroads separately interchanging a few railcars at a time, the BELT performs that operational activity for its owner railroads. Defendant BNRR was operating its train in the BELT yard, tracks and yard premises under an agreement authorized by Illinois statute 60 ILCS 35/1. Thus, plaintiff alleges that he has a cause of action against both defendants under the Federal Employers Liability Act.

## I. The BELT Railway Company of Chicago

Defendant BELT asserts that plaintiff Stuart Wallenberg is not employed by BELT, nor is he compensated by BELT or on BELT's payroll. Further, BELT asserts that BELT and its employees neither possessed nor exercised any supervision or control over the job duties of Wallenberg, his crew or his supervisors. As such, defendant asserts that BELT is not an "employer" of the plaintiff Stuart Wallenberg and thus FELA confers no liability against the BELT.

In response, plaintiff asserts that the evidence in the case establishes that BELT had the right to and did exercise supervision and control over plaintiff sufficient to establish an employee relationship with BELT for the purposes of FELA.

## A. FELA

Section 1 of FELA provides that "[e]very common carrier by railroad...shall be liable in damages to any person suffering injury while he is employed by such carrier...for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier". *45 U.S.C. Section 51*. Traditionally, the United States Supreme Court has liberally construed FELA to further Congress' remedial goal. *Consolidated Rail Corporation v. Gottshall*, 512 U.S. 532, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994). In *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957), the Supreme Court held that a relaxed standard of causation applies under FELA. "Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought". *Id.* at 506, 77 S.Ct. at 448.

Even though FELA is to be liberally construed, it does not mean that it is a workers' compensation statute. The Supreme Court has insisted that FELA "does not make the employer the insurer of the safety of his employees while he is on duty. The basis of his liability is his negligence, not the fact that injuries occur". *Ellis v. Union Pacific R. Co.*, 329 U.S. 649, 653, 67 S.Ct. 598, 600, 91 L.Ed. 572 (1947). While the issue of "[w]hat constitutes negligence for the statute's purposes is a federal question", we have made clear that this federal question generally turns on principles of common law: "the Federal Employers Liability Act is founded on common-law concepts of negligence and injury, subject to such qualifications as Congress has imported into these terms". *Urie*

2. Federal law mandates that locomotive engineers cannot be on duty longer than 12 hours consecutively. Federal Hours of Service Law, 45 U.S.C. Section 61. When a crew member or crew has worked in excess of this 12 hour period, such individuals are "outlawed".

*v. Thompson*, 337 U.S. 163, 182, 69 S.Ct. 1018, 1030–31, 93 L.Ed. 1282 (1949). Those qualifications are the modification or abrogation of several common-law defenses to liability, including contributory negligence and assumption of the risk. *See 45 U.S.C. Sections 51, 53–55.* Only to the extent of these explicit statutory alterations is FELA "an avowed departure from the rules of the common law". *Sinkler v. Missouri Pacific R. Co.,* 356 U.S. 326, 329, 78 S.Ct. 758, 762, 2 L.Ed.2d 799 (1958). Thus, although common-law principles are not necessarily dispositive of questions arising under FELA, unless they are expressly rejected in the text of the statute, they are entitled to great weight in our analysis. *Buell,* 480 U.S. at 568, 107 S.Ct. at 1416–1417. (Need full cite).

FELA is meant to provide a broad remedial framework for railroad workers and in light of that purpose, is to be liberally construed in their favor. *Atchison, Topeka & Santa Fe Ry. v. Buell,* 480 U.S. 557, 562, 107 S.Ct. 1410, 1414, 94 L.Ed.2d 563 (1987); *Kulavic v. Chicago & Illinois Midland Ry. Co.,* 1 F.3d 507, 512 (7th Cir.1993). Plaintiffs' burden in a FELA action is therefore significantly lighter than it would be in an ordinary negligence case. In a FELA action, the railroad is liable if "the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury.....*" Harbin v. Burlington Northern R.R. Co.,* 921 F.2d 129, 131 (7th Cir.1990).

In *Anderson v. Liberty Lobby,* 477 U.S. 242, 252–55, 106 S.Ct. 2505, 2512–13, 91 L.Ed.2d 202 (1986), the Supreme Court established that this evidentiary standard should bear on the review of this court for summary judgment. *Harbin,* 921 F.2d at 130–31. Specifically, the lightened burden of proof means a correspondingly easier task for a plaintiff defending a summary judgment motion. *Harbin,* 921 F.2d at 131. Since a plaintiff proceeding under FELA has such a low burden at trial, he or she can survive a motion for summary judgment "when there is even a slight evidence of negligence". *Harbin,* 921 F.2d at 131.

FELA was "enacted because Congress was dissatisfied with the common-law duty of the master to his servant. The statute supplants that duty with the far more drastic duty of paying damages for injury or death at work due in whole or in part to the employer's negligence". *Rogers v. Missouri Pac. R.R. Co.,* 352 U.S. 500, 507, 77 S.Ct. 443, 449, 1 L.Ed.2d 493 (1957).

This does not in any way mean that a FELA plaintiff is impervious to summary judgment. If the plaintiff presents no evidence whatsoever to support the inference of negligence, the summary judgment motion of a railroad should be granted. *See Deutsch v. Burlington Northern R.R. Co.,* 983 F.2d 741, 744 (7th Cir.1992), *cert. denied,* 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470. Neither the Federal Rules of Civil Procedure nor the Northern District of Illinois' Local Rules governing summary judgment are suspended in a FELA case just because of the plaintiffs' lightened burden as to negligence. *Lisek v. Norfolk and Western Railway Company,* 30 F.3d 823 (7th Cir.1994). Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment must be granted if there is "no genuine issue as to any material fact". Fed.R.Civ. P. 56(c).

In Count I of his complaint, plaintiff asserts that defendants BELT and BNRR were careless and negligent in one or more ways which caused injury to him. In essence, he asserts that defendants failed to exercise ordinary care to furnish plaintiff with a reasonably safe place in which to work and failed to use reasonably safe methods in the maintenance of the yard. He further alleges that defendants failed to inspect the yard when an ordinary inspection would have disclosed that the yard surface was covered with an "inordinate accumulation of melted and refrozen ice and snow of long duration", which allegedly could have been treated with abrasives and chemicals sufficient to avoid plaintiffs' injury. Plaintiff also asserts that defendants failed to apply such abrasives and chemicals to the accumulation of ice and snow when they knew or should have known that employees required to work in the yard would be subjected to injury. He next asserts that defendants also failed to warn plaintiff of the ice which was concealed under

the snow when a timely warning would have averted accident and injury. Lastly, he avers that defendants failed to provide a means to safely transport the crew to the cab site.

In his 12N statement, plaintiff expands these allegations. Specifically, in his 12N(3)(a) statement, Plaintiff asserts that he was hired by Burlington Northern in 1972 and has worked for the Burlington Northern since 1977. During the course of his employment, plaintiff was instructed to perform service for the benefit of Burlington Northern and the BELT, on the BELT's property. On February 27, 1994, plaintiff allegedly reported to the Burlington Northern yardmaster. The Burlington Northern yardmaster was in charge of plaintiff and his crew. However, once plaintiff entered the property of the BELT, plaintiff asserts that he was under the direction and control of the BELT's yardmasters and train masters.

Plaintiff alleges that he was injured while walking from the track designed by the BELT as the place where cabs must report. Plaintiff allegedly slipped, fell and sustained serious injuries.

In his 12N(3)(b) statement, plaintiff specifies in more detail the alleged negligence on the part of defendant BELT. Following are relevant excerpts from plaintiffs' 12N(3)(b) statement:

10. Plaintiff went on duty on February 27, 1994 at approximately 11:00 p.m. and was injured on February 28, 1994 between 9:30 a.m. and 10:00 a.m. At the time of his accident and injury, Plaintiff had worked less than twelve (12) hours.

11. The BELT exercised direction and control over Burlington Northern crew members assigned to work at the BELT's Clearing Yard.

12. The BELT exercised direction and control over Plaintiff and his crew members on February 28, 1994 while they were working at the BELT's Clearing Yard.

14. Plaintiffs' activities in delivering or interchanging freight on the BELT's property were services provided to and controlled by the BELT.

16. That it is the policy of the BELT to plow and salt the service roads on its property.

17. The service road upon which plaintiff was injured had not been plowed or salted at the time of plaintiffs' injury.

18. That it is the policy of the BELT to plow/salt the roads within 8 hours of when snow or ice conditions call for it.

19. The service road upon which plaintiff was injured consisted of icy ruts covered with snow.

20. Plaintiff slipped, fell and sustained injury as a result of the icy, snow covered service road.

23. Trainmaster Hester truthfully testified at a Burlington Northern hearing regarding plaintiffs' injury as follows:

Q. Would you say that the BELT Railroad was then negligent, in providing me a safe work place ?

A. There had been no snow removal in that area.

Q. Once again I want to ask you and I have to make this perfectly clear, was there any salt, sand or other suitable material applied to this walkway or roadway for me—to provide me with a safe place to work ?

A. No.

Q. I'm gonna ask you this question then in your opinion the BELT did not provide me with a safe place to work ?

A. In my opinion, the BELT did not provide you with a safe walkway to get to your cab.

Q. So then what you're saying is the BELT Railroad was negligent, in your opinion ?

A. That's true.

24. The snowfall described in # 21 should have been removed and roads salted on a daily basis.

25. The service road utilized by plaintiff at BELT had not been plowed or salted and there was a covering of snow over ice at the time of the accident.

The crux of defendant BELT Railway's motion for summary judgment seems to cen-

ter on the BELT's assertions that at all times, plaintiff was an employee of Burlington Northern and not of BELT Railway. As BELT asserts that it did not employ Wallenberg, nor exercise control over plaintiffs' job duties sufficient to subject it to liability under the "borrowed servant" doctrine of FELA, it maintains that it is entitled to summary judgment in this instance. In *Kelley v. Southern Pac. Co.*, 419 U.S. 318, 95 S.Ct. 472, 42 L.Ed.2d 498 (1974), the Supreme Court established that there are three ways in which a plaintiff can establish employment with a railroad for the purposes of FELA.

First, the employee could be serving as the borrowed servant of the railroad at the time of his injury. *See Restatement (Second) of Agency Section 227; Linstead v. Chesapeake & Ohio R. Co.*, 276 U.S. 28, 48 S.Ct. 241, 72 L.Ed. 453 (1928). Second, he could be deemed to be acting for two masters simultaneously. *See Restatement Section 226; Williams v. Pennsylvania R. Co.*, *313 F.2d 203, 209* (C.A.2d 1963). Finally, he could be a subservant of a company that was in turn a servant of the railroad. *See Restatement Section 5(2); Schroeder v. Pennsylvainina [Pennsylvania] R. Co.*, 397 F.2d 452 (C.A.7 1968).

FELA does not use the terms 'employee' and 'employed' in any special sense, *Robinson v. Baltimore & Ohio R. Co.*, 237 U.S. 84, 94, 35 S.Ct. 491, 494, 59 L.Ed. 849 (1915) so that the familiar general legal problem as to whose 'employee' or 'servant' a worker is at a given time presents itself as a matter of federal law under the Act. *See Linstead v. Chesapeake & Ohio R. Co.*, 276 U.S. 28, 33–34, 48 S.Ct. 241, 243, 72 L.Ed. 453 (1928). The question of each case must be decided on its peculiar facts and ordinarily no one feature of the relationship is determinative. *Cimorelli v. New York Central R. Co.*, 148 F.2d 575, 577 (6th Cir.1945). Although the Supreme Court has not reviewed a decision of a lower court that has discussed the matter, it has concluded that it is perfectly plain that the employer-employee question contains factual elements such as to make it one for the jury. *See Restatement, Agency 2d at 220, comment c; § 227, comment a.* Only if reasonable men could not reach dif-

fering conclusions on the issue may the question be taken from the jury. *See Chicago R.I. & P.R. Co. v. Bond*, 240 U.S. 449, 36 S.Ct. 403, 60 L.Ed. 735 (1916).

In *Baker v. Texas & Pacific R. Co.*, 359 U.S. 227, 228, 79 S.Ct. 664, 665, 3 L.Ed.2d 756 (1959), the Court reaffirmed that for purposes of FELA, the question of employment, or master-servant status, is to be determined by reference to common-law principles. The Court in *Baker* referred to sections of the Restatement (Second) of Agency dealing with the borrowed-servant doctrine and the general master-servant relationship as a guideline for analysis and proper jury instructions. *Baker*, 359 U.S. at 227, 79 S.Ct. at 665. Section 220(1) of the Restatement defines a servant as 'a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control'. *Baker*, 359 U.S. at 227, 79 S.Ct. at 665. In Section 220(2), the Restatement recites various factors that are helpful in applying that definition. While that section is directed primarily at determining whether a particular bilateral arrangement is properly characterized as a master-servant or independent contractor relationship, it can also be instructive in analyzing the three-party relationship between two employers and a worker.

Cases cited by both plaintiff and defendant provide guidance as to the evaluative process that must be taken to determine if a party establishes employment for FELA purposes.

Focusing on the locus of the power to control and direct the servant's work, the Court in *Standard Oil v. Anderson*, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480 (1909), emphasized that the importance of distinguishing between 'authoritative direction and control' and mere suggestion as to details or the necessary cooperation, where the work furnished is part of the larger undertaking, is necessary. *Standard*, 212 U.S. at 215, 29 S.Ct. at 252. That is, to determine whether a given case falls within one class or the other, it is necessary to inquire as to the work that is being performed.

For instance, in *Hull v. Philadelphia & Reading Railway Company*, 252 U.S. 475, 40 S.Ct. 358, 64 L.Ed. 670 (1920), petitioner was an employee in the general employ of Western Maryland Railway Company in Pennsylvania. The Court concluded that petitioner remained an employee of this company for all purposes because each company retained control of its own train crews, regardless of the contract governing the cooperation between the lines.

In *Linstead v. Chesapeake & Ohio Railway Company*, 276 U.S. 28, 48 S.Ct. 241, 72 L.Ed. 453 (1928), the Court found that the injured plaintiff was a loaned employee of the Chesapeake & Ohio Railway company. Plaintiffs' general employer was the Big Four Railroad. *Linstead*, 276 U.S. at 29, 48 S.Ct. at 241–42. Yet, traveling on the thirteen-mile stretch of C & O track between Cincinnati and Kentucky, the Big Four train crew was furnished with time tables and rule books of the C & O and was under the actual supervision and control of its trainmaster. *Linstead*, 276 U.S. at 29, 48 S.Ct. at 241–42. As the Big Four locomotive was pulling a train of cars over the stretch of the C & O, it was struck by a C & O train. *Linstead*, 276 U.S. at 29, 48 S.Ct. at 241–42. The Court concluded that plaintiff and his crew were doing C & O work while they transported cars over the thirteen mile stretch, under the C & O rules and the immediate direction and supervision of the C & O trainmaster who was in charge of the trains in the stretch of the C & O track. *Linstead*, 276 U.S. at 29, 48 S.Ct. at 241–42. In that instance, the court concluded there was a transfer of the plaintiffs' general employment of Big Four to the special employment by C & O. *Linstead*, 276 U.S. at 29, 48 S.Ct. at 241–42.

Then, the Supreme Court rendered the *Shenker v. Baltimore & Ohio Railroad Company* decision. 374 U.S. 1, 83 S.Ct. 1667, 10 L.Ed.2d 709 (1963). In *Shenker*, the plaintiff was employed by the B & O railroad at a station in Pennsylvania where there were two tracks owned and operated by the B & O, and two by the Pittsburgh and Lake Erie Railroad. *Shenker*, 374 U.S. at 6, 83 S.Ct. at 1671. On the date of the accident, plaintiff handled the mail for the P&LE train.

*Shenker*, 374 U.S. at 6, 83 S.Ct. at 1671. While he was loading the mail car with the assistance of a P&LE baggage man, plaintiff received a ruptured disc. *Shenker*, 374 U.S. at 6, 83 S.Ct. at 1671. The Court stated that immediate control and supervision is critical when determining for whom the servant is performing services. *Shenker*, 374 U.S. at 6, 83 S.Ct. at 1671. The fact that plaintiff may have been given some directions by the P&LE baggage man is an example of the minimum cooperation necessary to carry out a coordinated undertaking which cannot amount to control or supervision. *Shenker*, 374 U.S. at 6, 83 S.Ct. at 1671. Thus, the Supreme Court concluded that plaintiff was clearly an employee of the B & O and refused to allow recovery against the P&LE under FELA. *Shenker*, 374 U.S. at 6, 83 S.Ct. at 1671.

And in *Baker v. Texas & Pacific R. Co.*, 359 U.S. 227, 228, 79 S.Ct. 664, 665, 3 L.Ed.2d 756 (1959), the District Court found no day to day supervision that would support a finding that petitioner and his coworkers were in effect employees of the railroad. The district court thus refused to submit this issue to the jury. *Baker*, 359 U.S. at 228–29, 79 S.Ct. at 665–66. In the district court trial, the petitioner introduced evidence to show that his work was part of the maintenance task of the railroad and the material that he was pumping into the roadbed was supplied by the railroad. *Baker*, 359 U.S. at 228–29, 79 S.Ct. at 665–66. There was also evidence to show that a supervisor "admittedly in the employ of the railroad, in the daily course of the work exercised directive control over the details of the job performed by the individual workmen, including the precise point where the mixture should be pumped, when they should move to the next point, and the consistency of the mixture". *Baker*, 359 U.S. at 228–29, 79 S.Ct. at 665–66. Because the evidence of control or right to control was in serious dispute, the Supreme Court on review held that the employer-employee issue should have been permitted to go to the jury and reversed the decision of the Texas Court of Civil Appeals. *Baker*, 359 U.S. at 228–29, 79 S.Ct. at 665–66.

Subsequently, the Supreme Court addressed the issue again in *Kelley v. Southern Pacific Company*, 419 U.S. 318, 95 S.Ct. 472, 42 L.Ed.2d 498 (1974). The Court reasserted its stance that the traditional agency relationship between parties in conjunction with the master-servant relationship is not sufficient to satisfy the 'while employed' clause of FELA. *Kelley*, 419 U.S. at 322, 95 S.Ct. at 475. The standard instead has been proof of the master-servant railroad between the plaintiff and the defendant railroad. *Kelley*, 419 U.S. at 322, 95 S.Ct. at 475.

It is this precedent that has been applied in this circuit and guides us in this matter. *See Williams v. Shell Oil Company*, 18 F.3d 396 (7th Cir.1994), *Warrington v. Elgin, Joliet & Eastern Railway Company*, 901 F.2d 88 (7th Cir.1990), *Lisek v. Norfolk and Western Railway Company*, 30 F.3d 823 (7th Cir.1994), *Heater v. Chesapeake and Ohio Railway Company*, 497 F.2d 1243 (7th Cir. 1974).

In support of defendant BELT Railway's motion for summary judgment, defendant asserts that Wallenberg was not employed by nor the borrowed servant of BELT. BELT further asserts that it did not hire Wallenberg, did not place Wallenberg on its payroll, and did not possess any supervisory power or control over Wallenberg in the performance of his job duties. On the day of his accident, Wallenberg's crew allegedly received directions from BELT. Yet BELT asserts that these instructions were limited to directing the Burlington Northern crew as to which tracks they were to use when entering and leaving BELT's yard. Thus, BELT asserts that these instructions did not establish control and supervision over Wallenberg sufficient to support a finding that Wallenberg was an employee of BELT.

In response, plaintiff asserts that the amount of direction exercised by BELT over plaintiffs' crew constituted much more than "information for the convenience and safety" of the two railroads. Plaintiff allegedly received direct orders from the BELT's supervisors and was obligated to follow them. In addition, plaintiff asserts that he and his crew were obligated to follow the BELT's operating and safety rules. Allegedly, plaintiff was directed by the BELT not to take out another train. He was allegedly directed by the BELT to take a cab back to BN's Cicero Yard. Plaintiff, BN Trainmaster Hester and BELT Assistant Picken all testified under oath that plaintiff was under the direction and control of the BELT's supervisors at the time of plaintiffs' accident and injury. Further, under the operating agreement, plaintiffs' crew was required to obey the operating and safety rules of the BELT while engaged in interchange operations at the BELT's yard.

Plaintiff correctly cites the Supreme Court opinion in *Baker v. Texas & Pac. Ry. Co.*, 359 U.S. 227, 79 S.Ct. 664, 3 L.Ed.2d 756 (1959) which states in pertinent part as follows:

> The Federal Employers' Liability Act does not use the terms 'employee' and 'employed' in any special sense so that the familiar general legal problems as to whose 'employee' or 'servant' a worker is at a given time present themselves as matters of federal law under the Act. It has been well said of the question that '(e)ach case must be decided on its peculiar facts and ordinarily no one feature of the relationship is determinative'. . . [W]e think it perfectly plain that the question, like that of fault or causation under the Act, contains factual elements such as to make it one for the jury under appropriate instructions as to various relevant factors under the law. Only if reasonable men could not reach differing conclusions on the issue may the question be taken from the jury. . . 'The very essence of (the jury's) function is to select from among conflicting inferences and conclusions that which it considers most reasonable'.

*Baker*, 359 U.S. at 228, 79 S.Ct. at 665.

In this instance, reasonable men could reach differing conclusions on the issue of plaintiffs' employment status with defendant BELT. This court thus concludes that it would be premature to grant defendant's summary judgment motion at this time.

Therefore, the motion of defendant The BELT Railway Company of Chicago for

summary judgment pursuant to Federal Rule of Civil Procedure 56 is denied.

## II. Burlington Northern Railroad Company

Burlington Northern Railroad Company asserts that summary judgment is the appropriate remedy in this instance. As addressed in an earlier footnote in this memorandum, defendant Burlington has incorporated by direct reference defendant BELT Railway's Statement of Material Facts in support of its motion for summary judgment, along with affidavits in support of the statement of material facts, and the memorandum of law submitted by BELT and the arguments contained in the motion and memorandum of law. In further support of its motion, defendant Burlington Northern Railroad makes two additional arguments. The first argument is that plaintiffs' theory of liability against Burlington Northern is his alleged "dual employment" with both defendants which it contends is contradicted by the undisputed facts. The second argument is that Burlington Northern would be prejudiced if plaintiff were allowed to amend its complaint at this stage of litigation.

Initially, the court notes that an analysis to determine the employer status of Burlington Northern is unnecessary. Burlington Northern has previously acknowledged that plaintiff was employed by Burlington Northern at the time of the incident and does so again in its memorandum in support of its motion for summary judgment. Yet, defendant Burlington argues, "[i]f BELT is granted summary judgment on Count I (as it did not employ the plaintiff) it logically follows that the remaining allegations against Burlington Northern cannot stand". It is unclear how defendant Burlington is concluding plaintiffs' allegations provided in his complaint attempt to hold defendant "directly" liable for plaintiffs' injury. This court's review of the complaint simply does not find support for this proposition in Count I of the complaint.

Further, defendant Burlington has asserted this argument to the court without benefit of any citation of authority, save the general, non-specific cite to the Federal Employer Liability Act. At this time, this court has concluded that the facts are disputed with regard to plaintiffs' employment status with defendant BELT as it relates to FELA. To the extent that defendant Burlington has made the assumption, throughout its motion and subsequent reply, that plaintiff cannot be an employee of BELT because he was employed by Burlington Northern, this court rejects such as assumption as an incorrect interpretation of FELA. The Supreme Court has repeatedly established that the determination of 'employee' and 'employed' for FELA purposes is much more fact specific and multi-faceted than the determination of who pays the individual or who claims the individual. *See Linstead v. Chesapeake & Ohio Railway Company,* 276 U.S. 28, 48 S.Ct. 241, 72 L.Ed. 453 (1928), *Shenker v. Baltimore & Ohio Railroad Company,* 374 U.S. 1, 83 S.Ct. 1667, 10 L.Ed.2d 709 (1963), *Kelley v. Southern Pacific Company,* 419 U.S. 318, 95 S.Ct. 472, 42 L.Ed.2d 498 (1974).

Here, excerpts of plaintiffs' 12N(3)(a) statement articulate this ambiguity:

1. Plaintiff admits that he was hired by Burlington Northern in 1972 and that he has worked as an engineer for the Burlington Northern since 1977. However, during the course of his employment, Plaintiff was routinely instructed to perform service for the benefit of Burlington Northern and the BELT, on the property of the BELT. While engaged in such service on BELT property, Plaintiff is under the direction and control of the BELT and obligated to follow the BELT's Operating Rules and Regulations. During these times, plaintiff is in the dual service of Burlington Northern and the BELT, for FELA purposes. Plaintiff remains, at all times, subject to Burlington Northern's Safety Rules.

Burlington Northern, in response to plaintiffs' Rule 12N(3)(b) statement of material facts, asserts that none of plaintiffs' statements numbered 1—15 are material as plaintiffs' allegations that he was an employee of both the BELT Railroad and Burlington Northern for the purposes of FELA are incorrect. With regard to plaintiffs' statements 16–26, "[r]ecitation to such extraneous

facts is a needless waste of the court's time". (Defendant Burlington Northern's Response to Plaintiffs' Rule 12N(3)(b) Statement of Material Facts, Pg. 2). This court, in denying defendant's motion finds plaintiff is correct in that plaintiffs' 12N(3)(a) and 12N(3)(b) statements assert that plaintiff was an employee of Burlington and raises sufficient information to debate plaintiffs' employment with BELT Railway. Plaintiff asserts facts to establish that BELT allegedly exercised direction and control over plaintiff and his crew at the time of the accident. This court concludes that all of these facts are relevant to the issue of plaintiffs' employment status for the purposes of FELA. Thus, defendant Burlington Northern's motion to strike plaintiffs' 12N statement will be denied. In some sense, defendant Burlington Northern would be correct in contending that these facts, asserted in plaintiffs' 12N statement, are irrelevant in that defendant Burlington Northern has acknowledged it employed plaintiff. Yet, this court is bound to proceed in the manner that plaintiff has drafted his complaint. *See generally Graehling v. Village of Lombard,* 58 F.3d 295 (1995). As he has alleged dual employment, the facts in his 12N statement are directly relevant to determine if a transfer of employment took place between Burlington Northern and BELT which then makes BELT liable under FELA. Burlington Northern's acknowledgment of employer status does not stop the evaluation of 'employee' status for the purposes of FELA. As this court has denied defendant BELT's motion for summary judgment due to the genuine issue of material fact that exists regarding plaintiffs' employment status, it would be inconsistent to grant summary judgment to defendant Burlington Northern at this time because it is not clear who else was plaintiff's 'employer' at the time of the accident.

To the extent that defendant Burlington has asserted that amendment of plaintiffs' complaint would be prejudicial, this court will revisit that issue should it become an issue.

Therefore, at this time, this court finds sufficient precedent to deny defendant Burlington Northern's motion for summary judgment.

## CONCLUSION

Defendant BELT Railway Company of Chicago's motion for summary judgment is denied. Defendant Burlington Northern Railroad Company's motion for summary judgment is denied.